Dominica C. Anderson (SBN 124267)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
E-mail:  dcanderson@duanemorris.com

Daniel B. Heidtke (SBN 302450)
**DUANE MORRIS LLP**
865 South Figueroa St., Ste. 3100
Los Angeles, CA  90017
Telephone: +1 213 689 7400
Fax: +1 213 689 7401
E-mail:       dbheidtke@duanemorris.com

Attorneys for Plaintiff
Liberty Mutual Fire Insurance Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>V.<br><br>BOSA DEVELOPMENT CALIFORNIA II, INC.; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; CM FIRESTOP, INC.; HORIZON PAINTING CO., INC.; LYONS MASONRY, INC.; NEWWAY STRUCTURES, INC.; MISSION POOLS; PETER ROSS CA, INC.; S.D. SYSTEMS, INC. DBA SUPERIOR DOOR SYSTEMS; SOUTHLAND ELECTRIC, INC.; WILLIAM KELLY & SONS CALIFORNIA, INC.; STARLINE WINDOWS, INC.; STAR TEAM INSTALLATIONS INC.,<br><br>DEFENDANTS. | Lead Case No.:  3:17-cv-0666-AJB-BGS; 3:17-CV-00945-AJB-BGS<br><br>**LIBERTY'S MOTION TO STRIKE BOSA'S UNTIMELY EXPERT REPORTS**<br><br>SPECIAL BRIEFING SCHEDULE SEE ECF NO. 138<br><br>District Court: Hon. Anthony J. Battaglia<br><br>Magistrate: Hon. Bernard G. Skomal<br><br>Complaint Filed: April 3, 2017 |

Plaintiff/Defendant Liberty Mutual Fire Insurance Company ("Liberty") hereby moves to strike the "supplemental" expert reports of David Frangiamore and Edward J. McIntyre, disclosed by Plaintiff/Defendant Bosa Development California II, Inc. ("Bosa II") and Plaintiff Bosa Development California, Inc. ("Bosa I" and Bosa II

collectively, "Bosa"). This motion is made and based upon the memorandum of points and authorities that follow, the declaration of Daniel B. Heidtke filed concurrently herewith, the papers and pleadings on file, the Federal Rules of Civil Procedure, Federal Rules of Evidence, this Court's scheduling orders (ECF No. 106), and May 9, 2019 (ECF No. 138), and any oral argument that this Court may entertain should it so order.

Dated: May 16, 2019         DUANE MORRIS LLP

By: */s/ Daniel B. Heidtke*
Dominica C. Anderson
Daniel B. Heidtke
Attorneys for Plaintiff
Liberty Mutual Fire Insurance Company

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion seeks to strike two improper, "supplemental" expert reports disclosed and produced by Bosa on April 8, 2019. The reports should be stricken because:

- The "supplemental" expert reports concern facts and circumstances known to Bosa prior to the initial expert report deadline on March 8, 2019 (in some cases, known almost *2 years* before the deadline);
- One of the "supplemental" expert reports (Mr. McIntyre's report) contains "new" opinions also not covered by Bosa's initial expert disclosure served on January 4, 2019; and
- Supplemental expert reports that state additional opinions or seek to strengthen or deepen opinions expressed in an original report are beyond the scope of proper supplementation under Rule[1] 26 and subject to exclusion under Rule 37(c).

Three months after the initial expert disclosure deadline, one month after the initial expert report deadline, and one week after Liberty deposed several of Bosa's experts' depositions, Bosa produced two "supplemental" expert reports ostensibly authored by David Frangiamore[2] and Edward J. McIntyre. Mr. Frangiamore's 12-page "supplemental" report details 12 "new" opinions. Mr. McIntyre's 33-page "supplemental" report details 9 "new" opinions. None of these "new" opinions address the type of "inaccuracies" or other corrections that are otherwise proper "supplements" under the Rules.

In opposing this motion, Bosa will likely assert its typical excuse, that due to the press of other business, it was unable to comply with the Rules.[3] Bosa failed to

---

[1] The Federal Rules of Civil Procedure (hereafter, "Rule" or "Rules").
[2] Mr. Frangiamore has not been deposed, yet. (Heidtke Decl., at ¶ 10.)
[3] Bosa's likely claim that, due to the press of business, it was unable to comply should be viewed in the context of Bosa's other discovery issues. For example, Bosa failed to produce any documents during fact discovery, produced 9,189 pages on January 2, produced 49,304 pages on March 19 (about 40 hours prior to the first expert deposition), and another 35,152 pages on May 6. (Heidtke Decl., at ¶ 3.)

follow this Court's orders and did not request a continuance, period. Rule 37 is self-executing and to countenance Bosa's "supplemental" reports would eviscerate the requirement that parties timely disclose expert opinions. For these reasons, therefore, Bosa's failures are not harmless. Bosa's "supplemental" reports should be stricken.

## II.   BACKGROUND

On **April 8, 2019**, Bosa disclosed its "supplemental" expert reports at issue. (Declaration of Daniel B. Heidtke ("Heidtke Decl."), filed herewith, ¶2.) In his "supplemental" report, Mr. Frangiamore offered 12 "new" opinions, which all relate to circumstances and facts that had occurred, and which Bosa was aware, before the initial expert report deadline on March 8, 2019:

1. Liberty Mutual filed a frivolous Federal Rule of Civil Procedure 12(b)(6) motion [**on May 15, 2017**] alleging there was no legal basis for Bosa's claim that Liberty had improperly charged deductibles and refused to refund amounts under the Security Agreement for unlawful and fraudulent business practices under California Business and Professions code section 17200 *et seq.*("UCL").

2. Liberty Mutual committed continuing unreasonable claims handling conduct and bad faith by concealing and not promptly disclosing in its initial discovery responses [**on November 5, 2018**] the Marianne Boykin letter of August 11, 2009 which confirmed that Liberty Mutual agreed with Bosa's position that Bosa's alleged negligent supervision constituted but one occurrence despite a variety of alleged defects in a variety at Grande North [**and about which Bosa questioned Ms. Boykin during her December 14, 2018 deposition**].

3. Liberty Mutual should have disclosed its monetary claim reserve information related to the Project Claims in this litigation [**in documents produced on November 5, 2018**] and its ongoing failure to disclose this information violates insurance industry custom and practice and minimally acceptable claim handling standards.

4. Liberty Mutual misstated and misrepresented the applicable and controlling California law on the confidentiality of information disclosed in mediation [**during a January 30, 2018 discovery conference**].

5. Liberty Mutual engaged in unreasonable bad faith delay tactics by initially failing to disclose the factual basis for why multiple per occurrence deductibles were being charged on some of the Project sites [**in its July, November and December 2018 discovery responses**] and continuing to withhold this factual information during discovery in the coverage litigation

6. Liberty Mutual failed to produce qualified PMQ witnesses [**during November 15 and December 14, 2018 depositions**]

7. Liberty Mutual counsel made improper speaking objections in an effort to coach the PMQ witness Marianne Boykin during her continued PMQ

deposition testimony on February 22, 2019 [**at which Mr. Frangiamore was present**].

8. Liberty Mutual has continued to refuse to provide Bosa with its full factual basis for its coverage determinations on the Bosa project Sites

9. As a result of Liberty Mutual's decision not to designate a claim handling expert in this case, Liberty Mutual should accept my original and supplemental report as the undisputed standard of care upon which to evaluate Liberty Mutual's conduct in this case.

10. Liberty Mutual representatives and its counsel have made repeated bogus assertions that it was "unable" to explain the factual basis for application of multiple deductibles with respect to the Bosa Project claims.

11. Despite being requested on many occasions by Bosa to reconsider its coverage position and reimburse Bosa for all improperly withheld or collected policy deductibles and claims handling fees, Liberty has taken the unreasonable position that no such additional amounts are owed to Bosa due to the pending coverage lawsuit.

12. The above referenced misconduct by Liberty Mutual was done in the context of ongoing coverage litigation, and Liberty Mutual's has (sic) done little to investigate, recognize, admit or correct its ongoing misconduct. As a result, Liberty Mutual conduct (sic) is so egregious, knowing and conscious that it amounts to, malice, fraud and oppression that could expose it to exemplary damages in the ongoing coverage case.

(Heidtke Decl., Ex. "B" [Frangiamore's "Supplemental" Report].)

For his part, Mr. McIntyre offered 9 "new" opinions, summarized as follows:

13. Allegedly hiding the existence of "Boykin Exhibit 57" – a letter, authored by Ms. Boykin, which she discussed during her deposition on **December 14, 2018** when Bosa produced it to her.

14. "The Court's Discovery Orders – 'Clifton Orders'" – Mr. McIntyre's claim that this Court issued a "Clifton Order" on **January 30, 2019**, preventing Liberty's counsel from asking questions of Bosa's counsel during Ms. Boykin's deposition on **February 22, 2019**.

15. Allegedly improper interrogatory responses served by Liberty **on July 17, 2018**, supplemental responses served on **October 23, 2018**, and further supplemental responses served on **December 7, 2018**.

16. Allegedly improper use of documents Bosa contends are confidential, which documents Bosa contends were "used" or "exploited" on **October 23, 2018** and **December 7, 2018** (in supplemental interrogatory responses), and **February 25, 2019** (Liberty's motion for summary judgment).

17. Allegedly failing to cite controlling authority or "correct misstatements" concerning alleged statements made during a **January 30, 2019** discovery conference.

18. Alleged "litigation delay" concerning a "five-month delay" in answering interrogatory responses first served on **July 17, 2018** and then supplemented on **October 23, 2018** and again on **December 7, 2018**.

19. Filing a motion to dismiss on **May 15, 2017** (ECF No. 4), that was allegedly improper and violated the Professional Rules of Conduct.

20. An alleged "failure to supervise" Mr. Heidtke by Ms. Anderson, Liberty's lawyers in this case.
21. An alleged "pattern of litigation conduct at odds with professional ethical obligations[.]"

(Heidtke Decl., Ex. "A" [McIntyre's "Supplemental" Report].)

## III. LEGAL ARGUMENT

"Supplementation" under the Rules is limited, and Bosa's "supplemental" reports are not proper Rule 26(e) supplements. The reports should be stricken.

Rule 26(e) "supplementation" is proper in instances when a "party learns that in some material respect [a] disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" As the Ninth Circuit has explained, "[s]upplementation under the Rules means **correcting inaccuracies**, or filing the interstices of an incomplete report based in information that was no available at the time of the initial disclosure." *Luke v. Family Care & Urgent Med. Clinics,* 323 Fed. App'x 496, 500 (9th Cir. 2009) (quoting *Keener v. United States,* 181 F.R.D. 639, 640 (D. Mont. 1998)) (emphasis added). "Rule 26(e)'s duty to supplement is not 'a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise [its] disclosures in light of [its] opponent's challenges to the analysis and conclusions therein, can add to them to [its] advantage after the court's deadline.'" *Moussouris v. Microsoft Corp.,* 311 F. Supp. 3d 1223, 1239 (W.D. Wash. 2018) (quoting *Luke,* 323 F. App'x at 500); *accord, Crossfit, Inc. v. Nat'l Strength,* Case No. 14-cv-1191-JLS-KSC, 2018 U.S. Dist. LEXIS 12013 (S.D. Cal. July 18, 2018) ("*Crossfit*").[4] Indeed, as explained by the court in *Crossfit*, "[t]he duty to supplement under Rule 26(e) **does not give license to sandbag** one's opponent with claims and issues which should have been included in the expert witness' [original]

---

[4] *Rsinger v. SOC,* 306 F.R.D. 655 (D. Nev. 2015); *Reinsdorf v. Skechers,* 922 F. Supp. 2d 866 (C.D. Cal. 2013); *Lindner v. Meadow Gold,* 249 F.R.D. 625 (D. Haw. 2008).

report." *Crossfit,* at *27 (citations and quotations omitted; emphasis added). "Otherwise, Rule 26(e) 'would essentially allow for unlimited bolstering of expert opinions' which 'would wreak havoc in docket control and amount to unlimited expert opinion preparation.'" *Id.* at *28 (quoting *Akeva LLC v. Mizuno Corp.,* 212 F.R.D. 306, 310 (M.D.N.C. 2002)). "'**Accordingly, a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)**.'" *Id.* (quoting *Plumley v. Mockett,* 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010)) (quotations omitted; emphasis added).

Thus, the test is two-fold: first, whether the claims, opinions and issues should have been included in the expert witness's original report; and, if yes, second, whether exclusion or some other remedy is appropriate under Rule 37. *See, e.g., Risinger, infra* n. 4, 306 F.R.D. at 662 ("If full compliance with Rule 26(a) is not made, Rule 37(c)(1) **mandates some sanction**, 'the degree and severity of which are within the discretion of the trial judge.'") (quoting *Keener, supra,* 181 F.R.D. at 641) (emphasis added). In opposing this motion, it is Bosa's burden to demonstrate the "harmlessness" of or "substantial justification" for its failure to timely disclose and produce the "supplemental" reports at issue. *See id.*

Here, the claims, opinions and issues were known to Bosa prior to the initial expert report deadline and, as a result, should have been part of Bosa's initial expert reports. Because Bosa failed to timely disclose and produce the 21 "new" opinions spread across the 45-pages of the "supplemental" reports, a Rule 37 sanction is necessary. Here, because of the breadth of the reports, the reality that the facts and issues discussed therein were long-known to Bosa and, because of Bosa's other deliberate, discovery failures, the appropriate remedy is to strike the reports and preclude Mr. Frangiamore and Mr. McIntyre from discussing the issues and opinions contained therein.

### A. Bosa Was Aware of Every Issue in the "Supplemental" Reports Prior to the Initial Expert Report Deadline

Bosa has admitted that every issue in the "supplemental" reports was known to Bosa prior to the initial expert report deadline. (Heidtke Decl., at ¶4.) Even if Bosa had not admitted as much, a cursory review of the summary and list of opinions above clearly shows that Bosa's "supplemental" opinions are not based upon "new" information that occurred sometime after March 8, 2019 (the initial expert report deadline) and April 8, 2019 (the rebuttal expert report deadline). The "supplemental" reports, therefore, are untimely. *See* FRCP 26(a)(2)(B)&(D).

If Bosa did not have enough time to timely produce its initial expert reports, it could have requested a continuance. In fact, prior to the initial expert report deadline, the parties had already received several continuances, including most recently on February 13, 2019, when the Court extended the deadline for initial expert reports until March 8, 2019. (ECF No. 106.) In reality, Bosa did not need more time because the "new" opinions in the "supplemental" reports are based upon facts that Bosa's experts actually addressed in their initial reports, disclosed on March 8, 2019:

- Concerning Liberty's discovery responses: "Bosa was forced to request and subsequently compel discovery responses[5] to determine why Liberty Mutual believed it was entitled to take these multiple policy deductibles." (Ex. "C" to Heidtke Decl. (Frangiamore Initial Report), at 10.)
- Concerning Liberty's Rule 30(b)(6) witnesses and Court's order regarding the same: "Liberty Mutual's bad faith substandard misconduct has continued to the present day as evidenced by its Liberty Mutual's (sic) PMQ (sic) witness Marianne Boykin who in her first deposition refused to explain the factual basis under which multiple per occurrence deductibles can be taken with respect to the Legend project. Thereafter the Court in this case ordered Liberty Mutual to provide additional answers … As a result, Liberty Mutual again produced Ms. Boykin to provide these answers." (*Id.*)
- Concerning conduct at the second session of Ms. Boykin's deposition: "In the second session of Ms. Boykin's deposition…" (*Id.*)
- Concerning reliance on allegedly mediation-confidential documents: "I have recently become aware of and read the *ex parte* motion papers and opposition related to citations to legal authority and use of documents produced in a mediation in this case (Doc. Nos. 113; 113-1; 113-2; 113-3;

---

[5] Bosa never moved to compel interrogatory responses. (Heidtke Decl., ¶ 7.)

114; and 114-1). They raise additional ethics and professional responsibility issues that I address." (Ex. "D" (McIntyre Initial Report), at 46-47.)

Thus, Bosa's experts had time to prepare opinions on every issue raised in the "supplemental" reports. In fact, Mr. McIntyre's report and invoice to Bosa clearly show he reviewed and analyzed issues relating to: (1) Liberty's motion for summary judgment (ECF No. 108-1, filed February 25, 2019); (2) Bosa's 100+ page *ex parte* briefing relating Liberty's MSJ (ECF No. 113; filed March 5, 2019) and (3) Liberty's opposition (ECF No. 114; **filed on March 6, 2019**). (*See* Ex. "D" to Heidtke Decl., 46-48; Ex. "E," to Heidtke Decl. [10 hours billed on March 6 & 7].) Bosa's failure to timely disclose the "new" opinions is not based upon a lack of time, but either unpreparedness or a deliberate attempt to "sandbag" Liberty.[6]

It is undisputed that Bosa's "supplemental" reports are, in reality, untimely "initial" reports disclosed a month after the deadline for completion set forth in this Court's scheduling order. In addition to being untimely, Mr. McIntyre's "supplemental" report improperly opines on issues outside the scope of Bosa's disclosure. (Ex. "F" to Heidtke Decl.) The "supplemental" reports violate Rule 26.

### B.  Striking the Improper Supplemental Reports is Necessary & Proper

When Rule 26 is violated, "Rule 37(c)(1) mandates some sanction, the degree and severity of which are within the discretion of the trial judge." *Keener, supra,* 181 F.R.D. at 641. Rule 37(c)(1) provides that when a party fails to provide required information, it "is not allowed to use that information … to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FRCP 37(c)(1); *see, Yeti by Molly*, *supra*, 259 F.3d at 1106 (Rule 37 "gives teeth" to Rule 26). There is no excuse for not timely disclosing and producing expert opinions based upon facts known to Bosa for years (*see* ECF No. 4 [Liberty's motion to dismiss]), months, and weeks before the initial expert disclosures and report

---

[6] *Crossfit*, at *27 ("… Rule 26(e) does not give license to sandbag...").

deadlines. It is Bosa's burden to demonstrate that its conduct was "substantially justified" and "harmless." *See id.* Bosa <u>cannot</u> demonstrate that its conduct was "substantially justified."[7] Bosa's violation of Rule 26 also is not "harmless."[8]

If Bosa is allowed to "supplement" its reports in this case then the exception (i.e., Bosa's failure was "harmless" or "substantially justified") will *entirely* swallow the rule.[9] As support for the "supplemental" reports, Bosa contends that Liberty's filing of the motion for summary judgment on February 25, 2019 was a "watershed moment," which caused Bosa to reexamine its experts' opinions. (Ex. "G" to Heidtke Decl. [R. Allenby: "the ["supplemental" reports] were partly, and largely, predicated on the facts that Liberty filed mediation-confidential writings in the public record in support of the **MSJ [on 2/25/2019]** without prior notice to Bosa … and stuck to its guns and made arguments in [its *ex parte* opposition filed on **3/6/2019**]. […] [T]hese were watershed moments for Bosa […]."].) However, Mr. McIntyre had his deposition taken on April 1, 2019 and he testified that he had not yet been asked to supplement his initial expert report. (Ex. "H" to Heidtke Decl., at 25 ["I will obviously look at it more between now and [April] 8th *if I'm asked to*."].)

Striking and excluding the reports and opinions therein is proper and necessary. *See, e.g., United States v. 14.3 Acres of Land*, 2009 U.S. Dist. LEXIS 7148, *7, 72 Fed. R. Serv. 3d 853 (S.D. Cal. Jan. 30, 2009) ("The exclusion sanction is 'self-

---

[7] *E.g., Rojas v. Zaninovich, Inc.,* No. 1:09-cv-00705, 2011 U.S. Dist. LEXIS 106044, at *23 (E.D. Cal. Sep. 19, 2011) ("failure to adequately review information that was readily available … is not a proper basis for a supplemental report.").

[8] *See, e.g., Wong v. Regents*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of the court and other parties is not harmless.").

[9] Both of Bosa's experts providing "supplemental" reports are lawyers. Mr. Frangiamore **even provided an opinion in his initial report about Liberty's "completeness" in discovery responses.** (Ex. "B" to Heidtke Decl.) Surely, Bosa's experts understood Rule 26(a)'s requirement that initial reports contain a "complete statement of all [their] opinions[.]" FRCP 26(a)(2)(B)(i).

executing' and 'automatic.'") (citation omitted).  "[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy" for failure to comply with Rule 26.  *Yeti by Molly*, 259 F.3d at 1106.  Each of the five factors considered by the Ninth Circuit weigh in favor of striking the "supplemental" reports, including: "(1) the public's interest in expeditious resolution of litigation; (2) a court's need to manage its docket; (3) risk of prejudice [the party seeking sanctions]; (4) public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Keener, supra,* 181 F.R.D. at 641 (citing *Wendt v. Host Intern., Inc.,* 125 F.3d 806, 814 (9th Cir. 1997)); *14.3 Acres of Land, supra,* at *7-8.

Here, as in *Keener* and *Wendt,* the "supplemental" reports should be stricken and Mr. Frangiamore and Mr. McIntyre should be precluded from testifying at deposition and trial concerning the facts and opinions in their untimely "supplemental" reports.  As explained in *Keener* concerning the five elements,

> The public and the parties have an interest in expeditious resolution of litigation. Requiring the parties to comply with the Rules of Civil Procedure and with the court's scheduling order promotes achieving such goals [...] Setting forth deadlines allows a court to manage its docket[.] ... [¶]. Public policy favors disposition of cases on their merits, but that policy has a procedural as well as a substantive component.

Moreover, the court in *Keener* found that while complete exclusion of the subject expert's testimony was unwarranted, "the less drastic sanction of limiting [the expert's] testimony to that which was initially disclosed is appropriate."  *Id.* at 642.

Here, with its "supplemental" reports, Bosa proposes to grossly expand its allegations against Liberty and completely change the nature of this case, in addition to essentially starting over with expert discovery, given the need to re-depose Mr. McIntyre and, likely, Mr. Taylor (Bosa's damages expert).  Bosa's "supplemental" reports seek to change the core issue of the case from the number of "occurrences" (and, thus, the number of deductibles) to an indictment on Liberty's counsel and their conduct before this Court for defending itself in this coverage action.  In particular, Mr. Frangiamore's initial report contains **3 general categories** of facts about Liberty's conduct during this case (i.e., interrogatory responses, a Rule 30(b)(6) deposition, and

Liberty's MSJ), while his "supplemental" report contains **9 such general categories** (*see* Heidtke Decl., at ¶ 11); Mr. McIntyre's initial report contains **1 such general category** (i.e., Liberty's MSJ and opposition to Bosa's *ex parte*), while his "supplemental" report contains **7 such general categories** (*see, id.* at ¶ 12).

The prejudice to Liberty is clear. First, Liberty would at least be required to re-depose Mr. McIntyre; second, Liberty was "sandbag[ged]" by the fact that Bosa failed to disclose Mr. McIntyre on the topic of litigation conduct on January 4, 2019, as required by this Court's scheduling order; third, while Mr. Frangiamore's initial expert opinions on alleged litigation misconduct were limited, the "supplemental" reports are expansive and an improper attempt to convert Liberty's attorneys in this case to witnesses (and Bosa's attorneys, too, for that matter) in order to justify or explain their conduct, without the benefit of a rebuttal expert; fourth, expert discovery closes on June 4, 2019, summary judgment and *Daubert* motions are due June 17, 2019, and Bosa now – over 2 years into this case – seeks to dramatically expand this insurance coverage case arising out of four construction projects, including without first seeking leave to amend its complaint.

**IV.   CONCLUSION**

For the foregoing reasons, Bosa's "supplemental" reports are improper and should be stricken. Liberty should not have to bear the burden of Bosa's untimely disclosures or its improper attempts to grossly expand this case.

DATED: May 16, 2019          DUANE MORRIS LLP

By:  */s/ Daniel B. Heidtke*
Dominica C. Anderson
Daniel B. Heidtke
Attorneys for Liberty Mutual Fire Ins. Co.