SULLIVAN HILL REZ & ENGEL, APLC
Timothy C. Earl, SBN 174967
  *earl@sullivanhill.com*
Robert P. Allenby, SBN 156926
  *allenby@sullivanhill.com*
Michael A. Zarconi, SBN 288970
  *zarconi@sullivanhill.com*
600 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 233-4100
Fax Number: (619) 231-4372
Our File No. 0907-17224

Attorneys for Defendant and Plaintiff BOSA DEVELOPMENT CALIFORNIA II, INC. and Plaintiff BOSA DEVELOPMENT CALIFORNIA, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>BOSA DEVELOPMENT CALIFORNIA II, INC., et al.,<br><br>    Defendants.<br><br>AND RELATED CONSOLIDATED ACTION | Lead Case No. 3:17-cv-0666-AJB-BGS; 3:17-CV-00945-AJB-BJS<br><br>DEFENDANT AND PLAINTIFF BOSA DEVELOPMENT CALIFORNIA II, INC. AND PLAINTIFF BOSA DEVELOPMENT CALIFORNIA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF AND DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION TO STRIKE EXPERT REPORTS<br><br>SPECIAL BRIEFING SCHEDULE ORDERED [SEE DOC. # 138]<br><br>Magistrate Judge: Hon. Bernard G. Skomal<br>District Judge:    Hon. Anthony J. Battaglia |

Lead Case No. 17-cv-0666-AJB-BGS

# TABLE OF CONTENTS

PAGE

TABLE CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ...................................................................... ii

I.      INTRODUCTION ........................................................................... 1

II.     STATEMENT OF FACTS................................................................ 1

III.    DISCUSSION.................................................................................. 4

        A.      Governing Standards.......................................................... 4

        B.      Bosa's Supplemental Reports Were Not Improper and
                Were Justified..................................................................... 6

        C.      Any Impropriety Was Harmless and Any Prejudice
                Easily Remedied ................................................................ 8

IV.     CONCLUSION ............................................................................... 10

1

# TABLE OF AUTHORITIES

2

CASES                                                                    PAGE

3
4   Abila v. United States,
        No. 2:09-cv-01345-KJD-LRL
        2011 U.S. Dist. LEXIS 42944 (D. Nev. Apr. 14, 2011) ............................... 4, 5

5
6   Akeva L.L.C. v. Mizuno Corp.,
        212 F.R.D. 306 (M.D.N.C. 2002)........................................................ 6, 7

7
8   Crossfit, Inc. v. Nat'l Strength & Conditioning Ass'n,
        No. 14cv1191-JLS (KSC)
        2018 U.S. Dist. LEXIS 120136 (S.D. Cal. July 18, 2018)........................ 4, 7

9
10  Gray v. United States,
        No. 05cv1893 J (BLM)
        2007 U.S. Dist. LEXIS 17937 (S.D. Cal. Mar. 12, 2007)............................ 6

11
12  Keener v. United States,
        181 F.R.D. 639 (D. Mont. 1998).......................................................... 5, 7

13
14  Lindner v. Meadow Gold Dairies, Inc.,
        249 F.R.D. 625 (D. Haw. 2008) ........................................................... 7

15
16  Luke v. Family Care & Urgent Med. Clinics,
        323 F. App'x 496 (9th Cir. 2009) ................................................... 4, 5, 7

17
18  Macias v. Perez,
        No. 10cv973-MMA (BGS)
        2011 U.S. Dist. LEXIS 72870 (S.D. Cal. July 7, 2011) ............................ 5, 6, 8

19
20  Milhouse v. Travelers Comm. Ins. Co.,
        982 F.Supp.2d 1088 (C.D. Cal. 2013)................................................... 2

21
22  Moussouris v. Microsoft Corp.,
        311 F.Supp.3d 1223 (W.D. Wash. 2018)............................................. 7

23
24  Old Republic Ins. Co. v. Fsr Brokerage,
        80 Cal. App. 4th 666 (2000)............................................................. 7

25
26  Plumley v. Mockett,
        836 F. Supp. 2d 1053 (C.D. Cal. 2010)................................................ 7

27
28  Reinsdorf v. Skechers U.S.A.,
        922 F.Supp.2d 866 (C.D. Cal. 2013).................................................. 7

Richardson v. Korson,
    905 F.Supp. 2d 193 (D.D.C. 2012)................................................................. 6

Rojas v. Marko Zaninovich, Inc.,
    No. 1:09-cv-00705 AWI JLT
    2011 U.S. Dist. LEXIS 106044 (E.D. Cal. Sep. 19, 2011) ........................... 7

Scott v. Ross,
    140 F.3d 1275 (9th Cir. 1998)....................................................................... 4

Sherwin-Williams Co. v. JB Collision Servs.,
    No. 13-CV-1946-LAB (WVG),
    2015 U.S. Dist. LEXIS 30022 (S.D. Cal. Mar. 11, 2015).......................... 1, 4

United States v. 14.3 Acres of Land,
    No. 07cv886-W (NLS)
    2009 U.S. Dist. LEXIS 7148 (S.D. Cal. Jan. 30, 2009)................................ 7

Wanderer v. Johnston,
    910 F.2d 652 (9th Cir. 1990)......................................................................... 5

Wendt v. Host Int'l, Inc.,
    125 F.3d 806 (9th Cir. 1997)......................................................................... 7

White v. Western Title Ins. Co.,
    40 Cal. 3d 870 (1985) ................................................................................... 6

Wong v. Regents of the Univ. of Cal.,
    410 F.3d 1052, 1061 (9th Cir. 2005)............................................................. 7

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
    259 F.3d 1101 (9th Cir. 2001)..................................................................... 5, 7

STATUTES

Cal. Civ. Code § 47 ............................................................................................ 7

CALIFORNIA RULES OF PROFESSIONAL CONDUCT

Cal. R. Prof'l Cond. 1.1(c).................................................................................. 4

/ / /

/ / /

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. Proc. 37(c)(1) ................................................................. 5

## FEDERAL RULES OF EVIDENCE

Fed. R. Evid. 201(f) ........................................................................... 6

Fed. R. Evid. 703 ............................................................................... 4

## CHAMBER'S RULES

Battaglia, Disclosure and Discovery § VII(J)(1) at 33 .................................... 1

## SECONDARY AUTHORITIES

6 Moore's Federal Practice - Civil § 26.131 (2019) ....................................... 6

## I.   INTRODUCTION

Liberty justifies the extreme sanction of striking Bosa's supplemental expert reports under Rule 37(c)(1) on a very thin reed of prejudice arising from an alleged violation of Rule 26(e). Liberty cannot, however, credibly claim that it was "sandbagged" by feigning ignorance of either its own litigation conduct or that such would be the subject of expert opinion testimony. Cf. Sherwin-Williams Co. v. JB Collision Servs., No. 13-CV-1946-LAB(WVG), 2015 U.S. Dist. LEXIS 30022, at *17 (S.D. Cal. Mar. 11, 2015)(Gallo Mag. J)(Rule 26(e) not a "license to sandbag one's opponent"). Bosa timely disclosed both its intent to offer opinion testimony regarding Liberty's litigation conduct and timely disclosed such opinions in Mr. Frangiamore's initial report and Mr. McIntyre's deposition testimony. (See Battaglia, Disclosure and Discovery § VII(J)(1) at 33 (courts may consider expert deposition as supplement).)  Liberty does not, and here cannot, challenge the relevance or admissibility of its litigation conduct as evidence of its bad faith. (See Note 4 infra at 6.)  The most that Liberty can complain of is that, a month after the initial reports were disclosed, the supplemental reports gave greater detail to what had already been timely disclosed.  But Liberty's litigation conduct can be proven by other evidence.  As such, Liberty at most challenges the *scope* of the evidence that may ultimately be offered in opinion *form*. Such a narrow challenge does not warrant exclusion under Rule 37 because, in context, Bosa has not violated Rule 26, and Liberty has suffered no undue prejudice. The motion should be denied.

## II.   STATEMENT OF FACTS

The course of Liberty's litigation misconduct is well recounted by Liberty in its motion and the supplemental reports; however, that course of conduct has a direct bearing on why the supplemental reports were proper and justified. Starting in June, 2018 when Bosa first served written discovery on Liberty, Liberty embarked upon a campaign of delay and obfuscation as to the basis for its multiple-occurrence position core to this dispute. Not until October, 2018 did Liberty first reveal its evolving contention that three occurrences arose from the Legend Project. Even so, not until December, 2018 and a

week before Liberty was to be deposed did Liberty reveal that it was relying upon mediation-confidential writings. During Liberty's first deposition on December 14, 2018, Liberty acknowledged that it had inexplicably failed to produce at least one highly-relevant document and was relying upon mediation-confidential writings. Even so, Liberty was unprepared to testify as to its occurrence determinations for two projects.

Under the operative scheduling orders, initial expert disclosures were due on January 4, 2019; rebuttal disclosures on January 18, 2019; initial expert reports on March 8, 2019; and rebuttal reports on April 8, 2019. (See Doc. ## 87 & 106.)[1] Significantly, Liberty did not initially disclose *any* experts to give opinion testimony. Bosa timely disclosed that Mr. Frangiamore would opine as to Liberty's malice, oppression, fraud, and bad faith, "*including Liberty's litigation conduct in this action* and the nature and reasonableness of attorneys' fees and costs incurred by Bosa to obtain and/or retain policy benefits wrongfully withheld, refused, or challenged by Liberty." (Heidtke Decl. Ex. F lns. 8-13 at 187 (italics added).) Even more significantly, Liberty disclosed no rebuttal experts regarding bad faith generally or Liberty's litigation conduct in particular.

In a conference call on January 30, 2019, Bosa first advised the Court of its objections to Liberty's use of mediation-confidential writings in discovery. (Doc. # 103.) For the first time, Liberty claimed a "due process" exception under California law citing Milhouse v. Travelers Comm. Ins. Co., 982 F.Supp.2d 1088 (C.D. Cal. 2013). Without ruling on the substantive merit of Bosa's objections, the Court compelled a further deposition of Liberty and—to avoid having to delay the deposition pending a ruling on a formal motion—ruled that Liberty and Bosa would each retain and "take the risk" of their respective positions regarding mediation confidentiality. (See Doc. # 103.) Bosa deposed

---

[1]    As the Court is well aware, expert discovery has recently been continued and is poised to be continued again pending Judge Battaglia's rulings on pending motions relating to the discoverability and admissibility of mediation-confidential matters upon which the carriers' experts have relied. Per the Court's recent order, (see Doc. # 142), the parties will be filing a joint motion to continue the current scheduling order in 30-day increments pending that ruling. All indications are that the Court will grant those continuances.

Liberty again on February 22, 2019.  In the meanwhile, between January 30, 2019, and February 25, 2019, Bosa and Liberty continued to exchange their views regarding mediation confidentiality. (See Doc. ## 117 & 118.)

On February 25, 2019—a mere nine court days before initial reports were due—Liberty surprised Bosa not only by filing for summary judgment (the "MSJ"), but with mediation-confidential exhibits in the public record. This sent Bosa scrambling to obtain relief on March 5, 2019—some three days before initial experts report were due to be disclosed—to protect mediation confidentiality. On March 12, 2019, Judge Battaglia provisionally sealed the mediation-confidential exhibits to the MSJ and directed Bosa to file/serve its pending motions to strike and for sanctions by March 18, 2019. (Doc. # 116).  In the meanwhile, Mr. Frangiamore's initial report was timely disclosed on March 8, 2019, in which he opined at length that Liberty's litigation conduct evidenced bad faith. (Heidtke Decl. Ex. C at 57-59, 81-82 & 83.)

It was only after Liberty's MSJ that Bosa came to fully appreciate Liberty's litigation conduct in a different light. It had been bad enough that Liberty had withheld relevant documents and delayed disclosure of the factual basis for its multiple-occurrence determinations, but when Liberty flagrantly disregarded mediation-confidentiality knowing that Bosa objected, Bosa was forced to look back and evaluate Liberty's litigation conduct as a deliberate, ongoing effort to punish and force Bosa to suffer undue expense and delay and, indeed, violate ethical norms.  That analysis could not have been undertaken, and had not been undertaken, by Bosa's counsel or Messrs. Frangiamore or McIntyre during the short period between the filing of the MSJ and the deadline for disclosing initial reports.  Precisely because of the iterative nature of Liberty's litigation conduct, that analysis could not be undertaken and completed until early April. On April 1, 2019, Mr. McIntyre testified in his deposition as to his preliminary supplemental opinions. (Heidtke Decl. Ex. H.)  On April 8, 2019, Bosa disclosed the supplemental

///

///

1  reports. (Heidtke Decl. Exs. A & B.)[2]

2       Liberty has yet to depose Mr. Frangiamore. (Heidtke Decl. ¶ 10 at 4.)  Bosa has

3  agreed to allow Mr. McIntyre to be further deposed regarding his supplemental opinions

4  at Bosa's expense. (Id. Ex. G at 195-96.) Mr. Frangiamore is entitled to rely upon Mr.

5  McIntyre's opinions irrespective of whether Mr. McIntyre was designated to opine upon

6  Liberty's litigation conduct or Mr. McIntyre's supplemental opinions are admissible.[3]

7  Ample time remains to complete expert discovery, and no trial date has been set. (See

8  Note 1 supra at 2.)

9                   III.    DISCUSSION

10  **A.   Governing Standards.**

11       The parties generally agree regarding the law.  Supplementation under Rule 26(e)

12  is not "a loophole through which a party who submits partial expert witness disclosures,

13  or who wishes to revise [its] disclosures in light of [its] opponent's challenges to the

14  analysis and conclusions therein, can add to them to [its] advantage after the court's

15  deadline for doing so has passed." Luke v. Family Care & Urgent Med. Clinics, 323 F.

16  App'x 496, 500 (9th Cir. 2009); accord Sherwin-Williams, 2015 U.S. Dist. LEXIS

---

17       [2]    The supplemental reports were disclosed coincidentally on the date

18  "rebuttal" reports were due. Precisely because Liberty did not designate a bad faith
expert—and therefore produced no expert report thereon—Bosa's supplemental

19  reports were not "rebuttal" reports. For the same reason, Bosa's supplemental reports
were not untimely. No scheduling order prescribed a deadline for supplementing

20  expert reports; the deadline was thus the same as for the pretrial disclosures. Crossfit,
Inc. v. Nat'l Strength & Conditioning Ass'n, No. 14cv1191-JLS(KSC), 2018 U.S.

21  Dist. LEXIS 120136, at *26 (S.D. Cal. July 18, 2018)(Crawford, Mag. J.).

22       [3]    An expert may rely upon otherwise inadmissible information so long as
"experts in the particular field would reasonably rely on those kinds of facts or data in

23  forming an opinion on the subject." Fed. R. Evid. 703. Thus, it is well-established that
an expert can predicate an opinion on the statements and opinions of other experts

24  with whom the testifying expert consults—even if the statements and opinions would
otherwise be inadmissible. See, e.g. Scott v. Ross, 140 F.3d 1275, 1286 (9th Cir.

25  1998)(expert testimony predicated on inter alia "conversations with colleagues"
proper). Thus, even if Mr. McIntyre were precluded from rendering his supplemental

26  opinions because he was not initially designated thereon and has already been
deposed, Mr. Frangiamore could still rely upon Mr. McIntyre's supplemental report.

27  After all, both are attorneys, and Mr. McIntyre is a legal ethicist. See Cal. R. Prof'l
Cond. 1.1(c)(lawyer lacking learning and skill may professionally consult another

28  lawyer whom the lawyer reasonably believes is competent).

30022, at *17 (Rule 26(e) does not "give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report."); <u>Abila v. United States</u>, No. 2:09-cv-01345-KJD-LRL, 2011 U.S. Dist. LEXIS 42944, at *3-4 (D. Nev. Apr. 14, 2011)(improper to "use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report."). Rather, supplementation affords a "means [of] correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." <u>Luke</u>, 323 Fed.Appx. at 500 (quoting <u>Keener v. United States</u>, 181 F.R.D. 639, 640 (D. Mont. 1998)).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. Proc. 37(c)(1)(italics added). "[T]he burden is on the party facing sanctions to prove harmlessness." <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001). As this Court recounted the law of this circuit:

> The purpose of the "harmless" provision is "to avoid unduly harsh penalties in a variety of situations." Fed. R. Civ. P. 37 advisory committee notes. The exclusion sanction is "self-executing" and "automatic." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)(referencing the Advisory Committee's Notes to Rule 37(c)(1) (1993 Amendments)). However, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the party can prove that its failure to disclose the required information is substantially justified or harmless." *Id.* at 1106-07 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.") The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.* The following factors are used to guide the court's discretion: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

<u>Macias v. Perez</u>, No. 10cv973-MMA (BGS), 2011 U.S. Dist. LEXIS 72870, at *7-8 (S.D. Cal. July 7, 2011)(Skomal, Mag. J.); <u>accord</u> <u>Wanderer v. Johnston</u>, 910 F.2d 652,

656 (9th Cir. 1990); <u>Gray v. United States</u>, No. 05cv1893 J (BLM), 2007 U.S. Dist. LEXIS 17937, at *8 (S.D. Cal. Mar. 12, 2007)(Jones, J.)(setting out quinquepartite test for determining when Rule 37 sanctions should be imposed); <u>see</u> <u>also</u> <u>Richardson v.</u> <u>Korson</u>, 905 F.Supp. 2d 193, 200 (D.D.C. 2012)(exclusion is extreme sanction and *per se* improper in circumstances where prejudice can be eliminated—as when no trial date has been set, expert discovery remains open, and the opinions in the challenged supplemental report can be examined in a deposition); 6 Moore's Federal Practice - Civil § 26.131 (2019); <u>Akeva L.L.C. v. Mizuno Corp.</u>, 212 F.R.D. 306, 311 (M.D.N.C. 2002)(exclusion is most often appropriate where the court finds "deliberate delay or aggravated circumstances," or "[w]here [party] operates in bad faith or with deliberation").

Here, the parties disagree: 1) whether the supplemental reports by Messrs. Frangiamore and McIntyre were improper, particularly given the unique and necessarily iterative nature of ongoing litigation conduct as evidence of a carrier's bad faith; and 2) whether, assuming the supplemental reports were improper, they were justified under the circumstances and/or harmless such that the extreme remedy of exclusion should be denied.

**B.    Bosa's Supplemental Reports Were Not Improper and Were Justified.**

The basis for Messrs. Frangiamore's and McIntyre's supplemental opinions is Liberty's *ongoing* litigation conduct. Whether by expert opinion, percipient testimony, or binding judicial notice, <u>see</u> Fed. R. Evid. 201(f), the substantive law of California expressly holds that evidence of "various litigation tactics . . . or other conduct" by an insurer is admissible to show an insurer's bad faith. <u>See</u> <u>White v. Western Title Ins. Co.</u>, 40 Cal. 3d 870, 886 n.9 (1985).[4] <u>White</u>'s progeny defines when a carrier's litigation

---

[4]    Liberty does not cite, far less address <u>White</u> or its progeny. While during the meet and confer process leading up to this motion Liberty intimated—without citation to authority—that its litigation conduct is *not* admissible as evidence of bad faith, (<u>see</u> Heidtke Decl. Ex. G at 197), the parties are in seeming agreement that the relevance and admissibility of Liberty's litigation conduct are not properly before the Court. Ultimately, those issues will be addressed by Judge Battaglia as a <u>Daubert</u> or other motion *in limine* or otherwise at trial. (<u>See</u> Heidtke Decl. Ex. G at 194 (quoting <u>Macias</u>, 2011 U.S. Dist. LEXIS 72870, at *1 n.1 (Skomal, Mag. J.)("The only matter

(footnote continues…)

conduct—otherwise protected by the litigation privilege, Cal. Civ. Code § 47—is nonetheless admissible as *evidence* of a carrier's bad faith. If the bad faith claim is predicated *solely* on communicative conduct protected by the litigation privilege, then not only is evidence of the communicative conduct not admissible, but there simply is no bad faith claim. But if privileged litigation conduct merely *evidences* furtherance of a bad-faith course of conduct that has also occurred outside of the litigation, then the evidence is admissible to show that the litigation conduct establishes, or further evidences, bad faith. See, e.g., Old Republic Ins. Co. v. Fsr Brokerage, 80 Cal. App. 4th 666, 685-87 (2000).

The cases relied upon by Liberty all involved circumstances where an expert sought to supplement a report regarding opinions arising from historical facts preceding litigation.[5] Bosa does not dispute that some of the litigation conduct detailed in the supplemental reports took place before the initial reports were due—albeit, with respect to violations of mediation-confidentiality in connection with Liberty's MSJ by only nine

---

presently before the Court is whether Plaintiffs' experts should be excluded for failing to comply with Rule 26 and the operative case management order. If either party files motions *in limine* relating to expert testimony or motions based on *Daubert* [], these will be set before the assigned district judge.".) For purposes of this motion, it should be assumed that Liberty's litigation conduct is relevant, admissible, and a proper subject for discovery, including expert opinion.

[5]      See, e.g., Luke, 323 Fed. App'x at 496 (medical malpractice); Keener, 181 F.R.D. at 639 (same); Crossfit, 2018 U.S. Dist. LEXIS 120136, at *36 (false data disclosure); Reinsdorf v. Skechers U.S.A., 922 F.Supp.2d 866, 880 (C.D. Cal. 2013)(profits analysis for copyright infringement); Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 640-41 (D. Haw. 2008)(impropriety of cow grave yard); Akeva, 212 F.R.D. at 311 (patent infringement); Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062-63 (C.D. Cal. 2010)(patent infringement); Yeti, 259 F.3d at 1106-07 (trade secret damages); United States v. 14.3 Acres of Land, No. 07cv886-W(NLS), 2009 U.S. Dist. LEXIS 7148, at *3 (S.D. Cal. Jan. 30, 2009)(fair market value of condemned land); Rojas v. Marko Zaninovich, Inc., No. 1:09-cv-00705 AWI JLT, 2011 U.S. Dist. LEXIS 106044, at *20-21 (E.D. Cal. Sep. 19, 2011)(wage and hour violations); Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1061-62 (9th Cir. 2005)(learning disability discrimination); but see Moussouris v. Microsoft Corp., 311 F.Supp.3d 1223, 1240 (W.D. Wash. 2018)(declining to strike supplemental expert report regarding employment discrimination which "merely 'updated figures using the same methodology' that are not 'significantly different from the original reports.'"); Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997)(order excluding consumer survey evidence in trademark infringement action vacated where parties given "ample opportunity to begin the expert disclosure procedure anew.").

court days.  However, it was not until Liberty's MSJ—filed on the immediate heels of twice having to provide Rule 30(b)(6) witnesses and having delayed for months in responding substantively to Bosa's interrogatory responses, that Bosa came to appreciate, and have its experts analyze and render opinions regarding, Liberty's litigation conduct as further evidence of *malicious* bad faith. Bosa could not do so prior to the deadline for initial reports because it was in the throes of finalizing the initial reports and applying to Judge Battaglia for *ex parte* relief when the MSJ was filed. It was only after then that Bosa and its experts realized that not only had Liberty hidden its per-occurrence deductible position while it concocted a rationale to justify its position, but Liberty's litigation conduct now revealed a malicious design to increase Bosa's expense and disclose mediation-confidential writings.  Only then could the entire course of Liberty's litigation conduct—as detailed in the supplemental reports—be analyzed in that light.

## C.    Any Impropriety Was Harmless and Any Prejudice Easily Remedied.

Bosa did not engage in deliberate delay or bad faith in disclosing the supplemental opinions—Bosa acted as expeditiously as it could, and Liberty has presented no evidence to the contrary.  Accordingly, even if the supplemental expert reports were improper under Rule 26(e) and unjustified under Rule 37(c)(1), permitting the supplemental reports and allowing Liberty to conduct depositions thereon, including at Bosa's expense as to Mr. McIntyre, is an adequate "sanction" under the five-part test.

The first two parts of the test—expeditious resolution of litigation and management of the court's docket—redound in favor of Bosa. Bosa timely designated Mr. Frangiamore to give opinion testimony regarding Liberty's litigation conduct and timely revealed the thematic, factual basis therefore in his initial report. Mr. McIntyre timely testified in his deposition regarding Liberty's litigation conduct. At most, the supplemental reports add anecdotal and analytic detail to Mr. Frangiamore's initial opinions as to Liberty's litigation conduct. "[T]his is not a situation where [Liberty was] caught by surprise with a new theory of liability." Macias, 2011 U.S. Dist. LEXIS 72870, at *12 (Skomal, Mag. J.). The supplemental reports were timely because no deadline

1   therefore was set by the Court, and pre-trial disclosures are not due until August 5, 2019.

2   (See Note 2 supra at 4.)  Expert discovery remains open, no trial date has been set, and

3   Liberty will have ample time to complete expert discovery, including by deposing Bosa's

4   experts regarding their supplemental reports. (See Doc. ## 87 & 106; Note 1 supra at 2.)

5   Thus, allowing the supplemental reports and allowing Liberty to depose Messrs.

6   Frangiamore and McIntyre thereon will neither delay expeditious resolution of the

7   litigation nor interfere with management of the Court's docket.

8          As to the third factor, undue prejudice, there is simply no prejudice to Liberty that

9   would warrant an exclusion sanction.  Unlike the vast bulk of the cases relied upon by

10  Liberty, the supplemental reports did not inject a whole new theory or come after expert

11  discovery was closed. Expert discovery remains open; Liberty retains the opportunity to

12  depose Mr. Frangiamore, including as to his supplemental report; and Bosa has agreed to

13  allow Liberty to depose Mr. McIntyre regarding his supplemental report at Bosa's

14  expense. Neither Liberty's inability to designate a rebuttal expert nor Liberty's having to

15  incur additional time and expense to conduct these depositions can be said to be

16  prejudicial here for at least two reasons.

17         First, Liberty declined to designate *any* experts, including rebuttal experts,

18  regarding insurance coverage, bad faith, or litigation conduct, even though Mr.

19  Frangiamore was timely designated on such topics. Liberty did not ask for an extension

20  of time to do so.  Mr. Frangiamore's initial report and Mr. McIntyre's deposition revealed

21  their opinions as to Liberty's litigation conduct.  Having chosen not to offer expert

22  opinion testimony regarding that subject before even initial reports were due, Liberty

23  cannot credibly claim that it would have designated rebuttal experts had the supplemental

24  opinions been included in the initial reports.

25         Second—considering that Liberty is well aware of its own litigation conduct; that

26  Liberty has the benefit of the supplemental reports detailing Messrs. Frangiamore's and

27  McIntyre's opinions regarding that conduct; that Liberty has yet to depose Mr.

28  Frangiamore; and that Bosa will make Mr. McIntyre available for further deposition at

9          Lead Case No. 17-cv-0666-AJB-BGS

Bosa's expense—the marginal time and expense of Liberty availing itself of the opportunity to conduct such depositions is not the type of prejudice warranting an exclusion sanction.

Finally, the public policy favoring disposition on the merits and the availability of remedies less drastic than exclusion clearly auger in favor of allowing the supplemental reports. Precisely because the substantive law under <u>White</u> and its progeny allows ongoing litigation misconduct as evidence of bad faith, and because Liberty engaged in such conduct, the supplemental reports go to the merits of this case. Because evidence of Liberty's litigation conduct will be admissible anyway, there is no rational basis for depriving Bosa of the opportunity to present that evidence —whether at trial to the jury or otherwise—as expert opinion. So as to promote the public policy of merit-based disposition, the proper remedy is to continue affording Liberty the opportunity to: 1) depose Mr. Frangiamore in the first instance, including as to his supplemental opinions and his reliance upon Mr. McIntyre's supplemental report; and 2) further depose Mr. McIntyre regarding his supplemental report at Bosa's expense. This is precisely the more narrowly-tailored remedy that will preserve Bosa's case on the merits while fully mitigating any actual prejudice to Liberty.

## IV.   CONCLUSION

Liberty's motion should be denied.  Bosa's supplemental reports should stand. Liberty should avail itself of the opportunity to depose Messrs. Frangiamore and McIntyre regarding their supplemental opinions.  At most, Bosa should be required to pay for Mr. McIntyre's expert fees to be deposed on his supplemental opinions. Anything less would simply reward Liberty for its bad faith litigation misconduct while depriving Bosa of the ability to present its case on the merits in the form of expert opinion testimony.

Dated: May 28, 2019          SULLIVAN HILL REZ & ENGEL
                             A Professional Law Corporation
                             By: <u>s/ Robert P. Allenby</u>
                             E-Mail: allenby@sullivanhill.com