UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Liberty Mutual Fire Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Bosa Development California II, Inc., et al.,<br><br>Defendants. | Case No.: 3:17-cv-0666-AJB-BGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE (Doc. No. 117); and**<br><br>**DENYING PLAINTIFF'S MOTION TO STRIKE (Doc. No. 135)** |

Before the Court is Defendant Bosa Development California II, Inc.'s motion to strike three exhibits Plaintiff Liberty Mutual Fire Insurance Company used in support of its motion for summary judgment. (Doc. No. 117.) Bosa alleges the three exhibits were prepared for mediation, and thus are subject to California's broad and air-tight mediation confidentiality privileges under California Evidence Code § 1119. The Court agrees and, as explained in further detail throughout, finds the exhibits were prepared for mediation purposes. Accordingly, neither party may rely on the exhibits as they are shielded. Thus, the Court **GRANTS** Bosa's motion to strike, (Doc. No. 117), and **DIRECTS** the Court Clerk to **STRIKE** Exhibits S, T, and V attached to Plaintiff's motion for summary judgment. (Ex. S is Doc. No. 108-6 at 16–64; Ex. T is Doc. No. 108-6 at 65–375; Ex. V is Doc. No. 108-7 at 17–28.)

Additionally, Liberty seeks to strike portions of a declaration Bosa submitted in

1

support of its reply on its motion to strike, (Doc. No. 129-1, 130-1, 131-1). (Doc. No. 135.) However, the Court did not rely on Timothy Earl's declaration in its ruling on Bosa's motion to strike. Thus, the Court **DENIES** Liberty's motion. (Doc. No. 135.)

## I. BACKGROUND

The crux of this dispute centers around one key issue: whether the parties were in settlement negotiations through mediation when three exhibits were prepared. Back in 2005, Liberty issued an owner-controlled insurance program to Bosa and Bosa's subcontractors with respect to an underlying project called The Legend Condominiums. Bosa II sold the project to homeowners and a Legend Condominium Association was formed to take control of the common areas.

In 2012, the Association served Bosa a SB 800 Notice and the parties participated in a pre-litigation SB 800/Calderon mediation process. It was under this process the dispute arises. At the beginning of the process, the parties agreed to a comprehensive, confidential mediation process with Ross R. Hart. This process included site inspections, testing, expert meetings, exchanges of expert reports, joint preparation of expert documents, and mediation sessions. The goal of this process was to generate a mediated defect list and cost of repair. Bosa claims this entire process was subject to mediation confidentiality.

The Association then filed litigation in March 2015 against Bosa and others. At some point, the parties continued the mediation process with a new mediator, Gerald A. Kurland. In 2016, the Superior Court entered a Case Management Order ("CMO") in the underlying action and, with some exceptions, stayed all percipient and expert discovery pending the ongoing mediation. Under the CMO, the parties were to deposit non-privileged, percipient documents into a document depository with Bates-stamp numbers on them. The CMO directed the Association to prepare and deposit into the depository a Preliminary Defect Statement and Preliminary Cost of Repair. The CMO explicitly provided that "[s]aid statement and cost of repair and any attached documents shall be protected under [California] Evidence Code (sections 1115, *et seq.* and 1152, *et seq.*)." These documents were not given Bates-stamp numbers as they were to remain confidential.

Bosa contends that from 2012 until the settlement in 2017, the claims alleged in the SB 800 and Underlying Action were the subject of continuous mediation proceedings with the final session occurring on June 7, 2017. Bosa asserts mediation did not terminate until September 12, 2017, when the Settlement was signed.

At the basis of Liberty's federal complaint is a dispute regarding the number of "occurrences" arising out of the four underlying projects and thus the number of deductibles Liberty was entitled to charge Bosa, including by drawing down on Bosa's cash collateral on deposit with Liberty to secure Bosa's deductible obligations. Liberty used three exhibits gleaned from the underlying action in support of its summary judgment motion.

Exhibit S is an Expert Report prepared for Massie Berman by Scott Friesen, PE of Ivey Engineering, dated April 12, 2016. It was not deposited into the document depository and does not have a Bates stamp. The Association produced this Report under the CMO as a part of the Preliminary Defect Statement and Preliminary Cost of Repair.

Exhibit T is a series of slides prepared by Francesco Spagna of Simpson Gump & Heger, Inc. presented by the Association as a percipient document subject to discovery. It was not Bates-stamped and was submitted for the same purposes under the CMO as Ex. S. It is dated March 18, 2016.

Exhibit V is a Memo dated April 15, 2016, from Mr. Spagna to Massie Berman entitled "Preliminary Building Envelope Defect List." This was a part of the Association's Preliminary Defect Statement also produced pursuant to the CMO. It was not deposited into the depository and was not Bates-stamped.

## II. LEGAL STANDARDS

California Evidence Code § 1119 provides:

(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or

3

other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

(b) No writing ... that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.

(c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential.

In addition to the mediation code, Cal. Civ. Code § 6000(l) states that evidence submitted under the Calderon process is to remain confidential:

All defect lists and demands, communications, negotiations, and settlement offers made in the course of the prelitigation dispute resolution process provided by this section shall be inadmissible pursuant to Sections 1119 to 1124, inclusive, of the Evidence Code and all applicable decisional law. This inadmissibility shall not be extended to any other documents or communications which would not otherwise be deemed inadmissible.

### III. DISCUSSION

Bosa argues Exhibits S, T, and V must be stricken because they are confidential documents prepared for mediation and thus are privileged under § 1119. Liberty argues the documents were not prepared in the course of mediation. Another defendant joins in Liberty's opposition, arguing federal law governs the dispute, not California law.

#### A. Choice of Law

Defendant The Insurance Company of the State of Pennsylvania ("Penn.")—who also opposes Bosa's motion—asserts the Federal Rules of Evidence govern the admissibility of the Exhibits. (Doc. No. 123.) Rather, Penn. argues Fed. R. Evid. § 408(b), which excludes evidence of settlement offers or conduct, controls the discussion. Penn. states that under that rule the Exhibits are being offered "for a purpose other than to prove or disprove the validity of the claim[,]" and thus should be allowed. (*Id.* at 11.)

Here, the case is in federal court on diversity jurisdiction with a single claim for

4

declaratory relief. (Doc. No. 1.) The Court need not look any further than Liberty's own motion for summary judgment to determine under what jurisdiction's laws the Court will resolve the underlying dispute in this case. This is a classic *Erie v. Tompkins* (304 U.S. 64 (1938)) issue with the law of the state court controlling. In that summary judgment motion, Liberty relies on the California "causes" test and California jurisprudence to determine the number of occurrences and proximate cause of the damage. (Doc. No. 108 at 16.) Thus, since the Court will employ California law to determine the decision in this case, California privileges apply as well.

### B. Privileges under Cal. Evid. Code § 1119

Bosa maintains the Exhibits were prepared for mediation, are privileged and confidential under § 1119, and thus must be stricken from Liberty's summary judgment motion. The crux of Liberty's opposition is that the documents were prepared prior to any scheduled mediation and as such could not have been prepared for the purpose of a mediation. Yet, there is no case law supporting such a narrow interpretation that a mediation needs to be scheduled for documents to then become privileged under § 1119. However, there is a large amount of support holding the opposite—particularly under the facts here.

The underlying superior court case was a construction defect case, which requires the SB-800/Calderon process. As a part of that process, mediation is not simply encouraged, it is mandatory. Thus, being sophisticated parties, it is entirely foreseeable that as soon as Bosa sniffed the winds of litigation, it began to prepare for the upcoming mediation process which in this case lasted several years.

Liberty, however, focuses on the "but for" test found in *Wimsatt v. Superior Court*, which states that "[m]ediation confidentiality is to be applied where the writing, or statement would not have existed but for a mediation communication, negotiation, or settlement discussion." 152 Cal. App. 4th 137, 160 (2007). But Liberty's own flagship case cuts against Liberty's interpretation. The court also specified that the "evidentiary restriction is not limited to those communications made 'in the course of mediation.'" *Id.*

5

at 150. The Court goes on to explain, "[r]ather, as delineated in Evidence Code section 1119, the restriction applies to any written or oral communication made 'for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation,' as well as all 'communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation. . . .'" *Id.* at 150–51. The Court's use of the word "rather" in this context suggests the Court is expanding the scope of the definition, not limiting it.

The court also mentions the California Supreme Court's "repeated[] resisted attempts to narrow the scope of the mediation confidentiality." *Id.* at 152. "[T]he Supreme Court has broadly applied the mediation confidentiality states and has severely curtailed courts' ability to formulate exceptions." *Id.* Other cornerstone cases interpreting this privilege have held similarly. *See Rojas v. Sup. Ct.*, 33 Cal. 4th 407 (2004); *Foxgate Homeowners' Ass'n, Inc. v. Bramalea California, Inc.*, 26 Cal. 4th 1 (2001). In *Foxgate*, even when faced with evidence attempting to shield a party who had obstructed the mediation process, the Court found the privilege statutes "are clear." *Foxgate*, 26 Cal. 4th at 13. The Supreme Court stated, "section 1119 prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation." *Id.*

*Rojas* is instructive here because it involves a similar set of circumstances. In that case, the owner of an apartment building sued the contractors and subcontractors for construction defect related claims. 33 Cal. 4th 407, 111. The parties entered into a case management order protected under § 1119. *Id.* at 411–12. Plaintiff provided a preliminary defect list stating the structural defects. *Id.* at 412. The parties settled during the mediation process and the settlement stated that materials provided during the mediation were protected by the CMO and § 1119. *Id.* Tenants of the apartment building later sued and filed motions to compel evidence from the mediation proceedings. *Id.* This evidence included reports and photographs taken during the underlying action. *Id.* at 413. The

6

3:17-cv-0666-AJB-BGS

dispute worked its way to the California Supreme Court which once again upheld the confidentiality provisions as airtight. *Id.* at 421–24.

While the mediation privilege is airtight, beyond the express exceptions—none of which apply here—the privilege "does *not* protect items admissible or subject to discovery merely because they were introduced in mediation." *Wimsatt*, 152 Cal. App. 4th at 157. To illustrate, the Court states "if a witness observed a car accident and the witness's statement prepared for a mediation was used by one party to support his or her position in mediation, the witness would not be precluded from testifying in a subsequent trial, even if the witness' statement was protected from disclosure." *Id.* The Court concludes, "[t]hus, if parties use facts in mediation, mediation confidentiality does not necessarily preclude disclosure of those facts." *Id.* at 215. This is because under Evidence Code § 1120(a),

> [F]acts known to percipient witnesses constitute '[e]vidence otherwise admissible or subject to discovery outside of a mediation,' those facts do not 'become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation' through witness statements prepared for the purpose of, in the course of, or pursuant to, the mediation.

*Id.* (quoting *Rojas*, 33 Cal. 4th at 423 n.8).

Thus, the relevant inquiry is whether these documents include facts that are normally discoverable or were truly prepared for mediation. Looking at the documents themselves, it is easy to discern each Exhibit was prepared in the course of the underlying mediation proceedings. Exhibit S is an expert report which was not given a Bates-stamped number or deposited into the document depository. It is clear to this Court that the parties sent their experts to conduct this report to prepare for the ongoing mediation efforts, and that even under the "but for" test the Court is confident that but for the mediation, this report would not have been created and produced. Exhibit T is a PowerPoint presentation created for mediation for the expert to use to walk the mediator through evidence. Exhibit V is a memorandum between attorneys regarding the preliminary building envelope defect list, another document that was clearly prepared pursuant to mediation and thus covered under

the privilege. Thus, the Court finds these Exhibits were prepared for the purposes of mediation and are confidential in accordance with California Evidence Code § 1119.

### IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Bosa's motion to strike. (Doc. No. 117.) The Court **DIRECTS** the Court Clerk to **STRIKE** Exhibits S, T, and V from Liberty's motion for summary judgment. (Doc. No. 108-6 at 16–64; Doc. No. 108-6 at 65–375; Doc. No. 108-7 at 17–28, respectively.)

In addition to striking these documents, the Court **ORDERS** Liberty to re-file its motion for summary judgment without the exhibits now stricken or any references to the information in the stricken exhibits. While Liberty argues in its opposition that the information it relies on in the exhibits can be found elsewhere, (Doc. No. 125 at 25–27), the Court finds, upon reviewing the motion, it cannot intelligently decipher the pleadings by surgically removing each reference to the stricken exhibits. The Court will not go snorting around Liberty's motion hunting for truffles to make its claims. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Thus, the Court **DENIES as moot** Plaintiff's current motion for summary judgment. (Doc. No. 108.) The amended motion for summary judgment is due by **August 16, 2019**. Any opposition is due by **August 30, 2019**. Any reply is due by **September 6, 2019**. The hearing is set for **October 17, 2019**, at **2:00 p.m.**

As to Liberty's motion to strike, the Court did not rely on the declaration Liberty challenged in its ruling and thus **DENIES** that motion. (Doc. No. 135.) Finally, the Court **VACATES** all pre-trial dates subject to its ruling on Liberty's amended motion for summary judgment. The parties are **ORDERED** to contact Judge Skomal's chambers within 7 days after the Court issues that ruling to reset the dates thereafter.

**IT IS SO ORDERED.**

Dated: July 23, 2019

Hon. Anthony J. Battaglia
United States District Judge