UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INS. CO.,<br><br>Plaintiff,<br><br>v.<br><br>BOSA DEVELOPMENT CAL. II, INC et al.,<br><br>Defendants. | Case No.: 17CV666 AJB (BGS)<br><br>**ORDER DENYING LIBERTY'S MOTION TO STRIKE BOSA'S UNTIMELY EXPERT REPORTS**<br><br>[ECF 139] |

Plaintiff Liberty Mutual Fire Insurance Co., ("Liberty") moves to strike two expert reports provided by David Frangiamore and Edward J. McIntyre as supplements to their initial expert reports. (ECF 139.) The supplemental reports[1] were disclosed by Defendant Bosa Development California II, Inc. ("Bosa") a month after the deadline for disclosure of initial expert reports. (ECF 139.) Liberty argues that because they are not proper supplements, they are untimely initial reports that should be stricken under Federal Rule of Civil Procedure 37(c)(1). (*Id.*) Bosa has filed an opposition arguing both reports are proper supplemental reports necessitated by Liberty's ongoing litigation

---

[1] Although, as discussed below, only portions of the reports can be considered supplemental, the Court refers to them as supplemental reports throughout this order.

conduct and even if the Court finds they were not proper supplemental reports their late disclosure was substantially justified and harmless. (ECF 143.) For the reasons that follow, the Court finds portions of both reports are untimely initial reports because they are not proper supplements. However, striking them is not warranted. Instead, as explained in more detail below, the Court orders Bosa to pay for the cost of deposing McIntyre a second time and provides Liberty an opportunity to provide rebuttal expert(s) to rebut both experts initial and supplemental reports.

## I. BACKGROUND

The parties agree that during the relevant period of time,[2] the scheduling order required expert designations by January 4, 2019, rebuttal expert designations by January 18, 2019, expert reports by March 8, 2019, and rebuttal expert reports by April 8, 2019. (ECF 87, 106.) The scheduling order did not specify a date by which supplemental expert reports must be provided. The expert discovery cut off was May 5, 2019. (ECF 106.) Pre-trial disclosures were due by August 5, 2019 and the Pretrial Conference was set for September 3, 2019. (*Id.*) No trial date was set. Currently, all pretrial deadlines have been vacated pending a ruling from the assigned district judge on an amended motion for summary judgment that must be filed by August 16, 2019. (ECF 15 at 8.[3])

McIntyre and Frangiamore's initial reports were timely provided by the March 8, 2019 deadline for initial export reports. McIntyre provided an initial report dated March 7, 2019. (ECF 139-1 at 112-185.) Frangiamore provided an Initial Report dated March 8, 2019. (ECF 139-1 at 54-111.) However, both experts then provided supplemental reports dated April 8, 2019. (ECF 139-1 at 6-39 (McIntryre); ECF 139-1 at 40-52 (Frangiamore).) These initial and supplemental reports are discussed more fully below in analyzing whether they are actually supplements or untimely initial reports.

---

[2] The schedule has since been modified.
[3] The Court references the CM/ECF pagination throughout this order unless otherwise noted.

## II. DISCUSSION

The Court first considers whether McIntyre and Frangiamore's supplemental reports qualify as supplemental reports under Federal Rule of Civil Procedure Rule 26(e) or are untimely initial reports, including whether the supplement topics correspond to the topics addressed in the initial reports and whether the supplements are based on new information. Because the Court finds the two supplemental reports are not entirely supplemental, the Court next considers whether the failure to timely provide them was substantially justified or harmless under Rule 37(c)(1).

Liberty asserts that both supplemental reports are not supplemental and therefore are untimely initial reports. Liberty argues that they are not truly supplements because they are based on facts known to Bosa before the initial reports from each expert were provided and the supplements include additional opinions beyond the scope of their initial reports. Additionally, as to McIntyre, Liberty argues his supplement contains new opinions not covered by Bosa's initial expert designation on January 4, 2019.

Bosa asserts that the supplements only offer greater detail to the timely disclosed initial reports and that the analysis in the supplemental reports could not have been undertaken by the deadline for disclosing initial reports. As discussed more fully below, Bosa points to Liberty's motion for summary judgment as an event that prompted Bosa to view Liberty's litigation conduct up to that point in a different way. Additionally, Bosa argues the analysis in the supplements could not have been completed until early April, because of the iterative nature of Liberty's litigation conduct.

### A. Rule 26
#### 1. Rule 26(a)(2)

There is no dispute that both supplemental reports were provided after the deadline to provide initial expert reports, March 8, 2019. In this respect, if they do not qualify as supplemental reports, then they, or the portions of them that are not supplemental, are untimely initial expert reports.

Rule 26(a)(2) requires disclosure of an expert report for each expert that may offer expert testimony at trial that includes, among other requirements, "a complete statement of all opinions the witness will express and the basis and reasons for them" and the facts considered in forming those opinions. Rule 26(a)(2)(B). Because the Court set a deadline for providing expert reports, here March 8, 2019, all expert reports should have been provided by this date. Rule (a)(2)((D) ("A party must make these disclosures at the times and in the sequence that the court orders."); *see Luke v. Family Care and Urgent Med. Clinics*, 323 Fed. Appx. 496, 499 (9th Cir. 2009).

### 2. Rule 26(e)

Rule 26(e) requires a party that has made a disclosure under Rule 26(a), as Bosa has here with McIntyre and Frangiamore's initial reports, to "supplement or correct its disclosure or response: . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Rule 26(e)(1)(A).

"[R]ule 26(e) creates a "duty to supplement," not a right. *Luke*, 323 Fed. Appx. at 500. It is not "a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Id.*; *see also Lindner v Meadow Gold Diaries, Inc.*, 249 F.R.D. 625, 639 (D. Haw. 2008) (explaining Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witnesses report.") (citation omitted). "Rather, 'supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure*. *Luke*, 323 Fed. Appx. at 500 (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (emphasis added)). It is not "a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PJH (EMC), 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008). Given the Ninth Circuit's guidance in *Luke*, regarding the scope of a

proper supplemental expert report, the Court finds it appropriate to consider whether the information in McIntyre and Frangiamore's supplemental reports corresponds to their initial reports and whether that information was available before their initial reports. *Burger v. Excel Contractors*, No. 2:12-cr-01634-APG-CWH, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013) (setting out two-part test "(1) whether the supplemental information corresponds to a prior Rule 26(a) disclosure and, if so, (2) whether the supplemental information available at the time set for the initial disclosure" in determining whether a supplement is really supplemental under Rule 26(e)); *Ibekwe v. White*, Case No. CV 14-6523 DMG (JPRx), 2016 WL 6963051, at *4 (C.D. Cal. Feb. 23, 2016) (applying the same standard). If the information does not correspond to the prior disclosure, it cannot be said to correct an inaccuracy or fill in something incomplete within that prior disclosure. Additionally, if the facts upon which the supplement is based were available with sufficient time to address those facts in the initial report, they should have been addressed in the initial report. Relying on the same facts later is just a new late report based on the same information.

### 3. The Supplemental Reports

#### a) McIntyre Supplement

As to McIntyre's Supplement, the Court concludes that only portions of it correspond to the topics in his initial report and some of the information upon which the supplement is based was available well before the initial expert report deadline.

McIntyre's initial and supplemental reports both broadly address ethical obligations of attorneys under California's Rules of Professional Conduct and how those obligations have been breached.[4] However, each can fairly be read as addressing discrete subtopics within that universe.

---

[4] The Court's discussion of the expert reports and their substance throughout this order should not be interpreted as the Court taking any position on the merits of these opinions

5

17CV666 AJB (BGS)

The initial report primarily focuses on conflicts of interest by counsel, including the failure to recognize those conflicts, the failure to respond appropriately to the conflicts, and supervising attorneys' not addressing the conflicts of subordinates. It also addresses attorneys' failure to properly communicate with clients and obtain authority from them to act on their behalf. The initial report then discusses how these cumulative failures constitute a breach of fiduciary duty and deliberate indifference. It also briefly addresses attorneys misstating the law and failing to correct misstates of the law, as well as improper use of confidential or privileged documents.

The last two topics are significant because they are the only areas that overlap with McIntyre's supplemental report. The supplemental report also addresses misrepresenting legal authority and improper use of confidential and privilege documents, although the scope of the analysis is greater that in the initial report. In addition to these two topics that correspond to the initial report, the supplement includes five other topics not addressed in McIntyre's initial report —fairness to opposing counsel, truthfulness, delay, merits of claims, and obeying court orders. Although these topics generally relate to the overarching topic of attorney ethics, they do not correspond to the particular topics in the initial report.

The facts upon which McIntyre's supplemental report is based are certainly not entirely new because they all occurred before the deadline for completion of initial reports. The Court will not recite the entirety, but for purposes of this analysis, they can briefly be summarized as related to: the Boykin letters and Boykin's deposition, Liberty's responses and supplemental responses to discovery, the Court's *Clifton* Order and compliance with it, Liberty's motion for summary judgment and associated briefing regarding privilege documents, and the court's order denying a motion to dismiss. None of these events occurred after the initial report deadline and Bosa does not identify any

---

or their relevance to Bosa's claims. Relevancy was only noted by Bosa in pointing out that relevancy was not raised in this motion. (ECF 143 at 11-12.)

specific facts upon which the supplement was based that actually occurred after March 8, 2019.

However, as to both supplemental reports, Bosa points to Liberty's filing of a motion for summary judgment on February 25, 2019, nine court days before initial reports were due, as a precipitating event that caused Bosa to "fully appreciate Liberty's litigation conduct in a different light." (ECF 143 at 8, 12-13.) Specifically, Bosa points to Liberty's filing in the public case docket, in support of the motion for summary judgment, three exhibits that Liberty knew Bosa considered mediation confidential documents and the need for Bosa to seek relief from the court to address those filings as the point when Bosa realized what it characterizes as Liberty's "malicious design to increase Bosa's expense and disclose mediation-confidential writings." (ECF 143 at 13). This is consistent with McIntyre's brief treatment of the issues of misrepresenting the law and mishandling confidential documents in the initial report and more expanded discussions as to both in his supplemental report. Although not addressing the issue directly, Frangiamore's initial report notes that more information may be coming, and the report may be updated. This could be a specific reference to the motion for summary judgment or a general reference to ongoing bad faith litigation conduct.

### b) Frangiamore Supplement

As to Frangiamore's supplement, the Court also concludes that only portions of it correspond to the topics in his initial report. And, like McIntyre's supplement, the information upon which the supplement is based was available before the initial expert report deadline, although only shortly before as to facts related to the motion for summary judgment.

Frangiamore's initial and supplemental reports both generally address standards for handling insurance claims and describe ways in which Liberty's handling of Bosa's claims have fallen below those standards. To briefly summarize, the initial report covers three general topics. First, it addresses Liberty's handling of the issue of occurrences, including failing to explain Liberty's taking of multiple deductibles for a single project,

even after this litigation was commenced, and taking funds for multiple deductibles based on multiple occurrences without any investigation whether there were actually multiple occurrences. Second, it addresses the failure to appoint and supervise conflict-free counsel and independent and screened adjusters. Third, it addresses the *continuing* bad faith handling of Bosa's claims by Liberty that is resulting in Bosa suffering *ongoing* attorney's fees and costs. The initial report also notes the expectation that more information is anticipated and that the initial report may be updated.

Frangiamore's supplement also generally addresses standards for handling insurance claims and how Liberty has fallen short of those standards. It consists of twelve opinions regarding claims handling deficiencies. The Court will not list them all here, however, based on the Court's review, five of the twelve opinions can fairly be said to at least correspond to the first topic in the initial report, Liberty's handling of occurrences and drawing multiple deductibles. If viewed in a very general sense, the other opinions might be considered loosely connected to the initial report's third topic, Bosa *continuing* to incur attorney's fees and costs because of Liberty 's *ongoing* bad faith handling of Bosa's claims, because that category is so broad. However, it would be a stretch to conclude any of them are related enough to be filling gaps in the initial report. *See Luke*, 323 Fed. Appx. at 500 (explaining supplements are limited to "correcting inaccuracies" and "filling the interstices" of an incomplete initial report). Additionally, even as to the topics the Court can find do correspond to the initial reports, the opinions are not based on information obtained by Bosa since the initial reports were prepared. As noted above, Bosa relies on its view that Liberty's motion for summary judgment and handling of confidential documents prompted it to view Liberty's past conduct differently to justify the supplemental report based on facts known before the initial report.

### c) Conclusion as to Rule 26(e)

Given the Court's resolution of this issue, discussed below, the Court need not parse out page by page what is and is not supplemental, however, the Court concludes the following based on the Court's analysis of the reports, discussed above. The Court finds

that both supplemental reports are partially proper supplemental expert reports. As explained above the supplemental reports include analysis and opinions on some topics that do not correspond to the topics and opinions in the initial reports. Additionally, the supplemental reports are both partially based on facts that were known to Bosa at the time of the initial reports.

Given the short time between the filing of Liberty's motion for summary judgment, February 25, 2019, and the deadline for the initial expert reports, March 8, 2019, the court considers those facts associated with the filing of the motion for summary judgment and supporting documents new enough to justify the use of supplemental reports to address them. However, the Court cannot find the new opinions relying on facts prior to that filing are a proper basis for a supplemental report based solely on Bosa viewing those facts in a different light. The Court is not persuaded that this single event makes reports encompassing facts that Bosa had been aware of for months supplemental. For example, Frangiamore's supplemental report offers opinions based on Liberty's motion to dismiss, filed on May 15, 2017 and ruled on October 26, 2017. (*See* ECF 139-1 at 8, 29-30). This motion was filed almost two years before the supplemental report. The Court cannot find that supplemental. If there was an opinion to offer on it, it should have been addressed fully in the initial report. And, as to the supplemental reports corresponding to the initial reports, the Court rejects Bosa's assertion that "[a]t most, the supplemental reports add anecdotal and analytic detail," when Bosa has failed to identify with any specificity how the supplemental topics correspond to the initial reports. The supplements do generally fall within the same general areas discussed in the initial reports and do not add an entirely new theory. *See Luke*, 323 Fed. Appx. at 500 (finding new declarations asserting a new theory of causation did not qualify as supplements because they did not "correct an inaccuracy" or "fill in a gap based on information previously unavailable."). However, portions of both supplemental reports go beyond "correcting inaccuracies or filling the interstices of an incomplete report based on information that was not available at the time of initial disclosures." *Id*. As noted above,

the Court finds that many of the topics covered do not correspond to the initial report topics.

As to those portions that are truly supplemental, corresponding to initial report topics and based on facts no earlier than Liberty's filing of it motion for summary judgment, the Court finds the supplements timely. Under these circumstances, the provision of them by April 8, 2019 satisfied the "timely manner" requirement of Rule 26(e)(1)(A) as well as Rule 26(e)(2)'s requirement that they be provided by the deadline for pre-trial disclosures, not until August 5, 2019.

In conclusion, the Court finds that only portions of each supplemental report qualify as timely supplemental reports under Rule 26(e). Having found the supplemental reports are not entirely timely supplemental reports, the Court next considers whether the portions of the supplemental reports that are not supplemental should be stricken under Rule 37(c)(1).

### B. Rule 37(c)(1)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Rule 37(c)(1); *see also Yeti by Molly Ltd. v Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [Rule 26(a)(2)(B)'s] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). Rule 37(c)(1) itself provides alternatives. "In addition to *or instead of this sanction*," the Court "may order payment of the reasonable expenses, including attorneys' fees, caused by the failure" or "may impose other appropriate sanctions." *Id.* The Court has "wide latitude . . . to issue sanctions under Rule 37(c)(1) for a party's failure to comply with the requirements set forth in Rule 26(a)." *Margo G. v. Bloomfield*, Case No. 05CV2242 JM (AJB), 2008 WL 5431182, at *1 (S.D. Cal. April 23, 2008).

"Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly*, 259 F.3d at 1106. "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v Novelty, Inc.*, 375 Fed. Appx. 705, at *713 (9th Cir. April 13 2010) (affirming district court decision under Rule 37(c)(1) allowing testimony at trial by an expert whose full report was not timely disclosed) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). "The burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (citing *Yeti by Molly Ltd.*, 259 F.3d at 1107). Here, the burden falls on Bosa.

Applying these factors to the present case, the Court finds the prejudice to Liberty is minimal and can be cured. Liberty was aware of the facts upon which the supplemental reports were based. There is sufficient time available to depose McIntyre a second time regarding his supplemental report at Bosa's expense, and any additional burden associated with deposing Frangiamore regarding the additional topics, he has not yet been deposed, will be minimal given he will already be subject to deposition on timely disclosed topics. *See Medtronic*, 2008 WL 4601038, at * 3 (finding costs of deposition sufficient to address prejudice from supplemental, but potentially late, expert report). Additionally, there is time available to allow Liberty a rebuttal expert(s) to respond to the combined initial and supplemental reports of each expert, so Liberty has not been denied an opportunity to fully rebut these opinions.

11

17CV666 AJB (BGS)

There is also no likelihood of disruption of the trial or the progression of this case otherwise. As noted above, all pre-trial deadlines have been vacated[5] and there is no trial date or even a pretrial conference looming. This allows time to ameliorate any potential harm in the late disclosure of portions of these experts' opinions. The same was true of the circumstance when this issue arose. Both supplements were provided only one month after the initial report deadline with expert discovery still open for another month, the deadline to file motions for summary judgment still two months away, the pretrial conference five months away, and no trial scheduled.

This timing is significant in terms of harm. For example, in *Lanard Toys v. Novelty*, the Ninth Circuit found it significant that the untimely expert report was provided more than three weeks before the cut-off date for expert discovery, like they were here, and more than seven months remained before the date set for trial. 375 Fed. Appx. at *713. These were not untimely disclosures provided for the first time on a motion for summary judgment or on the cusp of trial. *See Luke*, 323 Fed. Appx at 499 (finding harmlessness not shown as to expert declarations provided for the first time in opposition to a summary judgment motion three months after the deadline for expert disclosures.) Nor is it a situation where Liberty had developed and pursued a specific strategy through motions or in trial preparations that has been undercut by an untimely disclosure. *See Oracle of Am., Inc. v. Hewlett Packard Enter. Co.*, Case No. 16-cv-01393-JST, 2019 WL 468809, at *3 (N.D. Cal. Feb. 6, 2019) (identifying the stage of the case, post-*Daubert* and summary judgment motions pursued based on existing expert reports, as significant in finding supplement reports untimely). Even when, unlike here, there is little flexibility in the existing schedule, modifications can be made when warranted to ameliorate any harm. In a case from our own district that was on the verge

---

[5] Even before these dates were vacated, there was sufficient time before the October 24, 2019 pre-trial conference, (ECF 146), to allow for an additional deposition, particularly given the parties chose to delay other expert discovery.

of trial, Judge Battaglia allowed the designation of a new expert and modified the schedule "in the interest of deciding [the] case on the merits."[6] *Margo*, 2008 WL 5431182.

The Court also finds no bad faith or willfulness involved in not timely disclosing the evidence. Although the Court was not persuaded that the supplemental reports were entirely supplemental based on Bosa theory of looking at the conduct in a different light, the Court does not have any reason to think these supplements were motivated by anything else. Nor was this a situation where Bosa attempted to change its experts' positions to overcome the challenges of rebuttal experts, Liberty had none. The Court finds no bad faith or willfulness in the untimely disclosures.

In summary, there is sufficient time for McIntyre to be deposed again, at Bosa's expense,[7] on his supplemental report, and Frangiamore may be deposed on his supplemental report when he is deposed on his initial report. Combined with giving Liberty an opportunity to address each experts' initial and supplemental reports with a rebuttal expert(s), the untimely disclosures are harmless and will not be stricken.

## III. CONCLUSION

Liberty's Motion to Strike is **DENIED**. The parties shall expeditiously meet and confer regarding appropriate deadlines for completion of the above noted depositions and the provision of rebuttal expert reports by Liberty. If the parties are unable to agree to a schedule, they must contact Judge Skomal's chambers not later than August 12, 2019. If

---

[6] Given the Court finds Liberty will have an opportunity to obtain a rebuttal expert to respond to McIntyre's initial and supplemental reports and will have the opportunity to depose him again at Bosa's expense, the Court need not separately address whether McIntrye's supplemental report goes beyond the scope of that identified in is initial designation.

[7] The expenses covered are McIntyre's expert fees that Bosa agreed to pay, ECF 143 at 15), and the expenses of recording the deposition.

they are able to agree to a schedule, they must contact Judge Skomal's chambers as soon as they finalize the schedule.

**IT IS SO ORDERED.**

Dated: August 5, 2019

_____
Hon. Bernard G. Skomal
United States Magistrate Judge

14
17CV666 AJB (BGS)