# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BOSA DEVELOPMENT CALIFORNIA II, INC., et al.,<br><br>Defendants.<br><hr>AND RELATED CONSOLIDATED ACTION | Lead Case No.: 17-cv-0666-AJB-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, (Doc. No. 156);**<br><br>**(2) DENYING BOSA DEVELOPMENT CALIFORNIA II, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (Doc. No. 157); AND**<br><br>**(3) DENYING LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT, (Doc. No. 166)** |

Presently before the Court is: (1) Liberty Mutual Insurance Company's ("Liberty") motion for summary judgment, (Doc. No. 156); (2) Bosa Development California II, Inc.'s ("Bosa") motion for partial summary judgment, (Doc. No. 157); and (3) Liberty's motion for leave to file a First Amended Complaint, (Doc. No. 166). All motions were fully briefed, and the Court held oral argument on December 5, 2019. After the Court heard oral argument, Bosa filed supplemental briefing in support of its motion for partial summary judgment. (Doc. No. 187.) Liberty and the Insurance Company of the State of Pennsylvania ("ICSOP") opposed the supplemental briefing. (Doc. Nos. 188, 191–192.) For the reasons set forth below, the Court **GRANTS** Liberty's motion for summary judgment, **DENIES** Bosa's motion for partial summary judgment, and **DENIES** Liberty's motion for leave to amend.

## I.  BACKGROUND

This case arises out of several defects found in a condominium construction project. The central issue for determination by the Court is how many "occurrences" arose under an applicable insurance policy, and accordingly, how many "deductibles" the insured, Bosa is liable for.

Bosa was the developer[1] of the Legend condominium project ("the Legend Project"). (Doc. No. 156-1 at 9.) Before Bosa began construction on the Legend Project, Bosa purchased a "wrap-up"[2] insurance policy issued by Liberty for all contractors and subcontractors involved in the project ("the Liberty Policy"). (*Id.* at 10.) The excess insurance policy was issued by ICSOP. (Complaint "Compl." ¶ 19.)

---

[1] Bosa was the developer—and not the general contractor—of the Legend Project. (Doc. No. 156-1 at 12.) Bosa did not perform any work on the project. (*Id.* at 13.) Instead, the general contractor of the Legend Project was Bosa Development California I, Inc. ("Bosa I"). Bosa I was not a named insured on the applicable insurance policy at issue here. (*Id.*)

[2] As defined by Cal. Ins. Code § 11751.82, "a 'wrap-up insurance policy' is an insurance policy, or series of policies, written to cover risks associated with a work of improvement, as defined in Section 8050 of the Civil Code, and covering two or more of the contractors or subcontractors that work on that work of improvement."

2

### A. The Liberty Policy and the ISCOP Policy

The Liberty Policy provides that the amount Liberty will pay for "bodily injury" and "property damage" is limited to $2,000,000 for each "occurrence," subject to a total aggregate limit for all damages within the "products/completed operations hazard" of $4,000,000. (*Id.* ¶ 24.) The Liberty Policy also required Bosa to pay a $500,000 deductible for each "occurrence." (*Id.*) The Liberty Policy defines an "occurrence" as "an accident, including continuous repeated exposure to substantially the same general harmful conditions." (*Id.* ¶ 25.)

The ISCOP Excess Policy sits excess, and follows form to the Liberty Policy, providing $15,000,000 for each occurrence/aggregate. (Doc. No. 156-1 at 12.)

### B. The Legend Project and Subsequent Lawsuits

Bosa, as the developer of the project, hired several subcontractors to perform work on the Legend Project. (*Id.* at 13.) In its agreement with the subcontractors, Bosa disclaimed responsibility for supervising the subcontractor's work, and required each subcontractor to enroll in the Liberty Policy. (*Id.*)

On February 12, 2012, the homeowners of the Legend condominium building, "The Legend Condominium Association" ("the Association"), provided notice to Bosa of various construction and engineering defects. (Compl. ¶ 29.) The defects included: (1) defective installation of exterior concrete flatwork, planters, canopies, balconies, and waterproofing, resulting in water damage; (2) defective installation of plumbing and HVAC; and (3) improper selection of materials such as cast iron piping and an Eccoduct In-Slab Duct Ventilation System. (Doc. No. 156-1 at 29.)

On March 16, 2015, the Association filed suit against Bosa ("the underlying Legend Action") seeking damages for these defects in San Diego Superior Court. (Compl. ¶ 30; Doc. No. 157-1 at 21.) On September 10, 2015, Bosa filed a cross-complaint against various subcontractors, arguing the subcontractors caused the harm alleged against Bosa. (Compl. ¶ 31.) Then on December 2, 2015, after the filing of the complaint, the Association provided additional notices to Bosa regarding newly-discovered deficiencies at the Legend

Project. (*Id.* ¶ 32.) In May 2016, the Association sent an additional notice of defects to Bosa. (Doc. No. 156-1 at 17.)

In response to Bosa's and the subcontractors' tenders, Liberty agreed to defend Bosa and the subcontractors in the underlying Legend Action pursuant to the terms and conditions of the Liberty Policy, subject to a reservation of rights. (Compl. ¶ 33.) Once all of the claims had been made, Liberty originally determined that there were as many as 12 claims comprising of 11 occurrences for which Bosa owed separate deductibles of up to $500,000 each. (Doc. No. 157-1 at 22.) Starting at least by January 15, 2016, Bosa challenged Liberty's position, and maintained that Bosa's supervision of the project constituted one occurrence, and thus it was only liable for one $500,000 deductible. (*Id.*)

The Association eventually settled their claims against Bosa and the subcontractors in the underlying Legend Action. (Doc. No. 156-1 at 17.) In the settlement, Liberty paid the full $4,000,000 aggregate limit. (*Id.*)

## II. PROCEDURAL HISTORY

On April 3, 2017, Liberty filed a complaint for declaratory relief in this Court against Bosa, ISCOP, and various other defendants. (Doc. No. 1.) Liberty's complaint sought a judicial declaration that there were multiple occurrences for which Bosa is liable for in the underlying Legend Action in San Diego Superior Court. (*Id.*) On the same day, Bosa filed a complaint against Liberty in San Diego Superior Court. Bosa's complaint includes, among other things, a claim for declaratory relief. Bosa's action was then removed to this Court on May 8, 2017. (*See Bosa Development California, Inc. et al. v. Liberty Mutual Fire Insurance Company et al.*, Case No. 19-cv-01847-AJB-BGS, Doc. No. 1.) Bosa's action and Liberty's action were consolidated in this Court, and Liberty's action was designated as the lead case. (Doc. No. 48.)[3]

---

[3] On September 25, 2019, a third related case between the parties was filed in this Court. (*See Liberty Mutual Fire Insurance Company v. Bosa Development California II, Inc. et al.*, 19-cv-01847-AJB-BGS.) In that case, Liberty seeks monetary relief from both Bosa, and the excess insurer, ISCOP if it is determined that there was only one occurrence under the Liberty Policy.

4

On August 16, 2019, Liberty filed a motion for summary judgment, (Doc. No. 156), and Bosa filed a motion for partial summary judgment, (Doc. No. 157.) The cross-motions for summary judgment were fully briefed on September 20, 2019. On September 24, 2019, Liberty filed a motion for leave to file a First Amended Complaint. (Doc. No. 166.) That motion was fully briefed on November 27, 2019.

On December 5, 2019, the Court heard oral argument on the cross-motions for summary judgment and motion for leave to file a First Amended Complaint. Then on January 21, 2020, Bosa filed supplemental briefing regarding the issues raised at oral argument. (Doc. No. 187.) Both Liberty and ISCOP opposed the supplemental briefing. (Doc. Nos. 188, 191–192.) This order follows.

## III. REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015).

### A. Bosa's Request for Judicial Notice

Bosa requests judicial notice of "the pleadings, papers and proceedings to date in the underlying Legend Action entitled *The Legend Condominium Association, etc. v. Bosa Development California II, Inc., etc., et al.*, currently pending [in] the Superior Court of the State of California for the County of San Diego, Central Divisions, Case No. 37-2015-00008869-CU-COCTL." (Doc. No. 162-2 at 2.) Specifically, Bosa asks the Court to take judicial notice of (1) the Register of Actions, (2) the plaintiffs' request for dismissal in the underlying Legend Action, (3) the Superior Court's minute order staying the underlying Legend Action, (4) the Superior Court's minute order vacating the trial date and the trial readiness conference, and (5) the fact that Bosa's cross-complaint in the Legend Action remains at issue, and has not yet been adjudicated. (*Id.* at 2–3.) Liberty does not oppose Bosa's requests for judicial notice.

### B. Liberty's and ISCOP's Request For Judicial Notice

Additionally, Liberty and ISCOP both seek judicial notice of the dismissal and certification orders in the action, *Lexington Ins. Co. v. Ill. Union Ins. Co.*, Case No. A-12-668035-C (8th Jud. Dist. Ct. Clark Cnty., Nev.) and related appeals in *Lexington Ins. Co. v. Illinois Union*, Nevada Supreme Court, Case No. 72047. (Doc. Nos. 188, 191, 194.)

A court has authority to take judicial notice that certain proceedings occurred, but a court may not take "judicial notice of disputed facts stated in public records." *Perdue v. Rodney Corp.*, No. 13CV2712-GPC BGS, 2014 WL 3726700, at *4 (S.D. Cal. July 25, 2014). As such, the Court **GRANTS** Bosa, Liberty, and ISCOP's request to the extent they seek judicial notice that certain proceedings occurred in San Diego Superior Court and Nevada state court. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 756 n.1 (9th Cir. 2014) (granting request for judicial notice of state court proceedings).

## IV. BOSA AND LIBERTY'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard and Burden of Proof

Before turning to the merits of the cross-motions, the Court will first address the applicable legal standard, and the arguments as to which party bears the burden of proof.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

If a moving party carries its burden of production, the nonmoving party must

produce evidence to support its claim or defense. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). Rule 56(e) requires "the nonmoving party to go beyond the pleadings and by her own affidavits, of by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party cannot "rest upon mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247–48. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The inquiry is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

"When parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotations and citations omitted). The Court must review the evidence submitted in support of each cross-motion and determine whether disputed issues of material fact are present, even if both parties assert that there are no uncontested issues of material fact. *Id.*; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 2000). If, however, the cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one. *Fair Housing Council of Riverside Cnty., Inc.*, 249 F.3d at 1134.

As a preliminary matter, the parties disagree as to who has the burden of persuasion

7

at trial on the central issue of the litigation—the number of occurrences that arose from the construction defects. Under California law, the insured has the initial burden of showing that an event should be covered under an applicable insurance policy. *See Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal. App. 4th 1236, 1244 (1992). Once an event has been shown to fall within the scope of coverage, the burden shifts to the insurer to demonstrate that an exclusion or limitation applies to exclude coverage. *See Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696, 705 (2007).

The parties point to each other as to who bears the burden of persuasion on the number of occurrences. Liberty contends Bosa—as the insured—has the burden to establish that the "occurrence forming the basis of its claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State*, 18 Cal. 4th 1183, 1188 (1998). Liberty argues that because Bosa bears the burden of showing that an occurrence is covered, Bosa also bears the ultimate burden of persuasion at trial on its claim that there was a single occurrence. (Doc. No. 156-1 at 20.) Bosa, on the other hand, argues Liberty—as the insurer—has the burden of persuasion on the number of occurrences because insurers generally have the burden to establish exclusion to coverage. (Doc. No. 157-1 at 20.) Bosa reasons that the determination of how many occurrences affects the number of deductibles Bosa is liable for, and deductibles should be considered a limitation to coverage. (*Id.*)

The Court agrees Liberty carries the burden of persuasion as to the number of occurrences. Here, the preliminary question of "whether an occurrence is within the scope of coverage" is not in dispute. (Doc. No. 157-1 at 31 n.9; Doc. No. 162 at 13.) As noted by Bosa, "any burden borne by Bosa to prove the existence of an occurrence triggering coverage under the Legend Policy has been met." (Doc. No. 162 at 13.) Indeed, Liberty has paid $4,000,000 to settle the Legend claims, and neither party disputes the coverage. (*Id.*) Thus, the burden is on Liberty to prove that there was not only one occurrence, but actually multiple occurrences, to recoup multiple deductibles as a limitation to coverage. *See Whittaker Corp.*, 11 Cal. App. 4th at 1243 ("***[T]he number of occurrences for purposes of applying coverage limitations*** is determined by referring to the cause or causes

8

of the damage and not to the number of injuries or claims. . .") (emphasis added). Additionally, the Court finds that there is authority supporting the contention that it is ***the insurer*** who bears the burden of persuasion on the issue of the number of occurrences. *See Evanston Ins. Co. v. Ghillie Suits.com, Inc.*, No. C 08-2099 JF (HRL), 2009 WL 734691, at *8 (N.D. Cal. Mar. 19, 2009) ("[T]he court found that the insurer had not met its burden of showing that there had been only one occurrence. . . ."); *Golden Eagle Ins. Corp. v. Moon Marine (U.S.A.) Corp.*, No. 3:12-CV-05438-WHA, 2013 WL 12174693, at *4 (N.D. Cal. Nov. 15, 2013) (insurance carrier failed to establish a single occurrence on summary judgment). As such, the Court holds that it is Liberty who has the ultimate burden of persuasion at trial concerning the number of occurrences under the Liberty Policy. Afterall, it is Liberty who seeks to establish multiple occurrences giving rise to Bosa's liability for three deductibles as a limitation on coverage so Liberty can recoup another $1 million above the first $500,000 deductible paid to settle the underlying claims.

**B.    Discussion**

Because the cross-motions for summary judgment request adjudication of the same issue and contain arguments common to both, the Court will address the motions together, giving due merit to each motion. *See Schutza v. City of San Diego*, No. 313CV2992CABKSC, 2016 WL 11621283, at *2 (S.D. Cal. June 29, 2016).

The basic facts underlying this action are not in dispute. The central issue presented in both motions for summary judgment is whether there was only one "occurrence" under the Liberty Policy, and accordingly whether Bosa is only liable for one deductible. Liberty seeks summary judgment on its single claim for declaratory relief, requesting an order that there were three, or at least three "occurrences" as a matter of law. (Doc. No. 156-1 at 9.) Liberty argues there were at least three, discrete events that caused the damage at the Legend condominium: (1) the alleged defective installation of exterior concrete flatwork, planters, canopies and balconies, and waterproofing; (2) the alleged defective installation of interior plumbing and the HVAC system; and (3) the alleged negligent selection of materials, namely pipes and an Eccoduct system. (Doc. No. 156-1 at 26.)

9

Bosa, on the other hand, seeks partial summary judgment as to Liberty's single claim for declaratory relief, and Bosa's claim for declaratory relief.[4] Bosa seeks a judicial declaration that Bosa is liable for no more than one $500,000 deductible for the one "occurrence" arising out of its negligent development and supervision of the Legend Project. (Doc. No. 157-1 at 9.)

### 1. The Proper Application of the Causation Test

The parties' extensive briefing on the cross-motions for summary judgment focuses almost entirely on a single question of law. The parties agree that as a matter of law, the proper application of the "causation test" governs the determination of the number of "occurrences" under an insurance policy. (*See* Doc. No. 156-1 at 21; Doc. No. 157-1 at 27.) The parties disagree, however, on how the test works and how it should be applied.

Under California law, the causation test states that the number of occurrences under an insurance policy depends on the *cause* of injury rather than the number of injurious effects or harms. *See State Farm Fire & Cas. Co. v. Elizabeth N.*, 9 Cal. App. 4th 1232, 1236 (1992). Indeed, an "occurrence has generally been held to mean the underlying cause of the injury, rather than the injury or claim itself; otherwise, the insurer's effort to limit its liability per occurrence would be substantially weakened." *Whittaker Corp.*, 11 Cal. App. 4th at 1242. However, when a cause is interrupted, or when there are several autonomous causes, there are multiple "occurrences" for purposes of determining policy limits and assessing deductibles. *Caldo Oil Co. v. State Water Resources Control Bd.*, 44 Cal. App. 4th 1821, 1828 (1996). Therefore, the critical fact supporting a finding of multiple occurrences is whether there are different causal conditions. *Id.*

Liberty argues there were multiple occurrences because there were multiple, discrete events that caused the damage to the condominium building. Specifically, Liberty's

---

[4] Bosa's complaint asserts claims for relief for (1) breach of written contract, (2) declaratory relief, (3) breach of implied covenant of good faith and fair dealing, (4) fraud, (5) conversion, (6) civil theft, (7) unlawful and fraudulent business practices under California Business and Professions Code § 17200, (8) accounting, and (9) money had and received. (Related Case No. 17-cv-00945-AJB-BGS, Doc. No. 1-2.)

position is that different subcontractors worked on different areas of the building, and those different subcontractors caused different damage to the condominium building. (Doc. No. 156-1 at 22.) Bosa, however, asserts that there was only one occurrence because the damage was the result of a single event—its own negligent supervision of the subcontractors. (Doc. No. 157-1 at 9.)

An analysis of case law helps shed light on how the causation test should be applied. For example, in *Landmark Am. Ins. Co. v. Liberty Surplus Ins. Corp.*, No. CV1210728MWFJEMX, 2014 WL 12558121 (C.D. Cal. Apr. 9, 2014), the district court, applying the causation test under California law, addressed the question of whether multiple occurrences arose in a construction defect case. *Id.* at *5. The excess insurers in that case argued that there were two occurrences—the defective installation of: (1) window systems and sliding glass doors, and (2) glass handrails along the second and third floor balconies. *Id.* The defective window installation resulted in water leakage due to a failure to properly apply sealant and failure to properly integrate the window and door systems. *Id.* In contrast, on the guard rails, the builders allegedly improperly installed lag screws attached to clips fastened to the deck structure, which penetrated the waterproofing elements of the rails and substrates. . . ." *Id.*

The primary insurers in *Landmark*, argued that there was only one occurrence because "both of the alleged defects were installed by the same company on the same property pursuant to the same contract." *Id.* at *6. The *Landmark* court disagreed. In applying the causation test, the *Landmark* court reasoned that if a "general negligent approach to its construction projects" were sufficient to make multiple occurrences a single occurrence, then there would "rarely be multiple 'occurrences' under the policies." *Id.* The *Landmark* court held that "[d]istinct accidents caused by distinct defects in distinct areas of the property cannot be treated as a single occurrence under California law." *Id.* The *Landmark* court explained that the defects in the windows and doors were generally the result of the same causal conditions—failure to appropriately apply sealant and integrate the systems. *Id.* at *6. And the defects in the handrails, by contrast, were caused by fully

11

distinct conditions in a fully distinct area of the property. *Id.* The water intrusion from the handrails was caused by physical penetrations into the waterproofing systems. That cause was not at all similar to the failure to properly integrate the window and door systems and the improper application of sealant. *Id.*

Similarly, in *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania*, No. 15-CV-02744-LHK, 2017 WL 897437 (N.D. Cal. Mar. 7, 2017), the court resolved the question of whether there was a single occurrence or multiple occurrences as a matter of law in a construction defect suit. *Id.* at *22. *St. Paul* involved construction defects to 17 student dormitories constructed by various subcontractors. *Id.* at *1. The alleged defects were found in (1) the interior drywall, and (2) the exterior stucco work. *Id.* After settling the underlying construction defect claim, the primary insurer sought contribution from the excess insurers. *Id.* at *4. The excess insurers argued there was only one occurrence. *Id.* at *21. They maintained that the defects were not caused by "separate installation defects, but are both caused by the negligent supervision." *Id.* at *23. Applying the causation test, the *St. Paul* court rejected the excess insurers' position. The court held that "there is no evidence that the defective stucco installation was caused by the same type of actions as the interior defective green board installation or vice versa. Indeed, the record shows that completely different individuals did the work and different foremen supervised the exterior and interior work." *Id.* at *22.

Bosa, on the other hand, relies heavily on a Massachusetts appellate court opinion, *RLI Ins. Co. v. Simon's Rock Early College*, 54 Mass. App. Ct. 286 (2002) for the proposition that "when the issue is the number occurrences, we must look to the 'cause' of the injury *by reference to the conduct of the insured for which coverage is afforded.*" *Id.* at 290 (emphasis added). The *Simon's Rock* case arose from a shooting spree by a college student who killed two and injured four. *Id.* at 287. The victims and their families alleged liability on the part of the college based on negligent supervision of the student shooter. *Id.* at 295. Prior to the shooting, the college learned the shooter had firearms on campus in violation of school policy, confronted the student, but did not search his dorm room or

12

seize the weapons. *Id.* at 289–90. The first issue was whether the cause of the incident was the shooter or the negligent supervision of the college for the purposes of the causation test. The second issue was whether there was one occurrence—the general negligent supervision by the school—or whether there were multiple occurrences, i.e., the failure to search the shooter's room, to confiscate his weapons, to call the shooter's parents, to call the police. *Id.* at *295. The court held that "it is with reference to the conduct of the college and its employees that we now determine the question of the number of occurrences under [the primary insurer's] policy of insurance." *Id.* at 293–94. Focusing on the college's conduct, rather than the student who had pulled the trigger, the court held that the college's negligence was the sole cause of the college's liability such that there was only one occurrence. *Id.* at *296.

Bosa extends the reasoning of *Simon's Rock* to say that "Bosa's alleged negligent supervision is a single, proximate and continuous cause of all damage alleged at the Legend. Once coverage for Bosa's liability was triggered based on allegations of negligent supervision of all operations on the Legend Project, there is no reason to look any further back in the chain of causation." (Doc. No. 162 at 18.) Bosa uses *Simon's Rock*, and similar cases, to focus the causal event on the insured, Bosa, and not on the subcontractors responsible for the actual construction of the Legend Project. But the Court finds *Simon Rock's* and similar cases cited by Bosa inapposite because those cases addressed instances where the injury arose out of clearly non-covered conduct by intentionally inflicted injuries. In the cases cited by Bosa, the courts had to focus on the insured because otherwise, the causal event would be the intentional tortfeasor. *See, e.g., Simon's Rock*, 54 Mass. App. Ct. at 292 ("[A]s we conclude, in the matter at hand, it is an insured's actions or failures to act (here the alleged negligence) and not the deliberate acts of a wrongdoer that constitute the "cause" of the victims' injuries."); *World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003), abrogated by *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006) (addressing issue of whether the two separate planes in September 11th terrorist attack constituted one or two "occurrences"). This is not the case

13

here where both Bosa and the subcontractors were named in the Liberty Policy, and the actions alleged to have resulted in the damage to the Legend Project were acts of negligence.

All in all, the Court finds Bosa's position that there was merely one occurrence unpersuasive. As Liberty explains, the undisputed facts show there were three occurrences. First, the negligent installation of concrete flatwork, balconies, and waterproofing by subcontractors Peter Ross, Starline Windows, and Newway led to water damage throughout the Legend condominium building. (Doc. No. 156-1 at 26.) Second, the defective installation of plumbing by a subcontractor, William Kelly, led to various damage through the building. (*Id.* at 29.) Specifically, chilled water piping insulation was not properly installed resulting in condensation, leaks, and eventually corrosion of the pipes. (*Id.*) In some areas, the plumbing was not properly sloped, and caused sewage backups and improper drainage. (*Id.* at 28–29.) And third, the improper selection of cast iron piping and Eccoduct in-slab dryer vent systems was another occurrence as the materials selected were inherently defective. (*Id.* at 30.)

Here, there is no showing that the "negligent supervision" of the waterproofing that allegedly caused the water damage is the same as the "negligent supervision" that caused the improper installation of plumbing, or the improper selection of materials. In fact, Bosa fails to produce any evidence that it was negligent as a developer of the project at all. Indeed, as Liberty highlights, Bosa argued in the underlying Legend Action in state court that it was not and cannot be negligent because it disclaimed all liability for construction defects. (Doc. No. 156-1 at 31.) Bosa even filed a cross-complaint against the various subcontractors, arguing the subcontractors caused the harm alleged against Bosa. (Compl. ¶ 31.)

Further, the allegations here—that the harms were caused by Bosa's "general negligent approach" to supervising construction projects are analogous to *Landmark* and *St. Paul*. *Landmark*, 2014 WL 12558121 at *5. As the *Landmark* court illuminated, such an interpretation would mean that there would never be more than a single occurrence in

14

the course of a single construction project, no matter how disparate the harms. *Id.*; *see also Ins. Co. of N. Am. v. Nat'l Am. Ins. Co.*, 37 Cal. App. 4th 195, 206 (1995) ("In this case, however, there was not a 'single cause.' Buildings 4 through 6 were not damaged because of the work done on buildings 1 through 3, but instead were damaged by the work done on buildings 4 through 6."); *AIG Specialty Ins. Co. v. Liberty Mut. Fire Ins. Co.*, No. 217CV01260APGNJK, 2018 WL 1863056, at *4 (D. Nev. Apr. 18, 2018) ("Such an interpretation in the context of a complex construction project would make almost all construction defects a single occurrence because the insurer could simply characterize them all as a . . . failure to adequately supervise subcontractors, regardless of the dissimilarities in time, space, impact to different parts of the project, or bases of liability."). Under Bosa's interpretation of the insurance policy, there would never be more than one occurrences. This cannot be the case as the policy clearly contemplates multiple occurrences by its definition of what constitutes an occurrence. As such, the Court will not take such an expansive view of an "occurrence" in this construction defect context.[5]

The supplemental authority submitted by Bosa does not compel a contrary conclusion. (Doc. No. 187.) Bosa submits supplemental case law to bolster its argument that even under "wrap policies"—where multiple subcontractors are also insured along with the developer—there is still one occurrence from the perspective of the developer. (*Id.* at 7.) But Bosa's first problem is one of the cases it cites to the Court is a vacated, unpublished Nevada state trial court ruling that the Court may not consider. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A decision may be reversed on

---

[5] Bosa also offers two other similar disputes between Bosa and Liberty on different condominium projects to demonstrate the parties' course of dealings. In those two projects, Bosa claims Liberty advised Bosa's outside coverage counsel that they would treat claims asserted under similar circumstances as one single occurrence, i.e., Bosa's negligent supervision of construction. (Doc. No. 157-1 at 17–20.) But having determined the meaning of occurrence as relevant under California law, the Court need not look further into the course of dealings between the two parties, and need not address Bosa's arguments attempting to create a dispute of immaterial fact because those projects do not relate to the Legend Project. *See T.W. Elec. Serv., Inc.*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.").

15

other grounds, but a decision that has been vacated has no precedential authority whatsoever.").

And second, the other case Bosa provides, the *Park Terrace* case, is a distinguishable and unpublished California state trial court case. *See Park Terrace Dev. LP v. AIG Specialty Ins. Co.*, No. 37-2014-00020075-CU-IC-CTL. Even if this case were citable, it is not clear *Park Terrace* even supports Bosa's position. In *Park Terrace*, the San Diego Superior Court held that bodily injury claims alleged in one lawsuit and construction defect claims alleged in another lawsuit both resulted from defects in a building's plumbing system and were caused by the same occurrence—the general contractor's negligent supervision. (Doc. No. 187-1 at 25–26.) But the Superior Court did not purport to hold that when applying the causation test under a wrap policy, courts must look from the perspective of the developer or general contractor. In fact, it did not even mention the wrap policy. In any event, the facts of *Park Terrace* are also distinguishable because the case involved defects arising from the building's plumbing system. By contrast, here, the problems with the construction were not limited to one area. Instead, the defects may be grouped into three distinct problematic areas: (1) the defective installation of materials leading to water intrusion, (2) defective installation of plumbing/HVAC, and (3) defective selection of materials. *See Ins. Co. of N. Am.*, 37 Cal. App. 4th at 206 ("In this case, however, there was not a 'single cause.' Buildings 4 through 6 were not damaged because of the work done on buildings 1 through 3, but instead were damaged by the work done on buildings 4 through 6."). Thus, these supplemental authorities do not help Bosa's cause.

* * *

In summation, neither party has shown a dispute of material fact. Bosa has failed to establish that it is entitled to partial summary judgment as a matter of law. Liberty, on the other hand, has satisfied its burden in proving that there were three occurrences. Therefore, the Court **DENIES** Bosa's motion for partial summary judgment, and **GRANTS** Liberty's motion for summary judgment.

//

## I. LIBERTY'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Next, the Court will address Liberty's motion for leave to amend. Liberty seeks leave to file a First Amended Complaint after the close of discovery, and after the filing of its motion for summary judgment, in order to add two new claims. (Doc. No. 166-1.) The claims Liberty seeks to add are: (1) "Quasi-Contract/Unjust Enrichment/Reimbursement" against Bosa; and (2) "Equitable Indemnity" against ICSOP, the excess insurer. (Doc. No. 166-3 at 10–11.) Bosa and ISCOP opposes Liberty's motion. (Doc. Nos. 168–169.) For the following reasons, the Court **DENIES** Liberty's motion for leave to file a first amended complaint.

### A. Standard of Review

Whether leave to amend a pleading should be granted is governed by Federal Rule of Civil Procedure 15 which provides that "leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Specifically, the Ninth Circuit has instructed that this policy "be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citations omitted). Despite the policy of "liberality," leave to amend is not automatic if sought outside of the time limits set forth in Rule 15(a)(1). In such instances, courts consider the following factors in determining whether to grant leave to amend: (1) whether the party seeking the amendment has acted in bad faith; (2) whether undue delay will result from amendment; (3) whether the opposing party will be unduly prejudiced; and (4) whether amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004). The consideration of undue prejudice to the opposing party carries the greatest weight. *Id.*; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

### B. Request for Judicial Notice

Relevant to this motion, Bosa requests judicial notice of the complaint for declaratory relief, and "Order Granting Joint Motion to Continue Discovery Deadlines and

17

17-cv-0666-AJB-BGS

Setting Telephonic Status Conference Regarding Settlement" entered August 28, 2018 in this instant matter, Case No. 3:17-cv-0666-AJB-BGS. (Doc. No. 181-2 at 2.) Bosa also requests judicial notice of the docket, complaint, Bosa's motion to dismiss, and Liberty's opposition to the motion to dismiss in the case *Liberty Mutual Fire Insurance Company v. Bosa Development California II, Inc. et al.*, Case No. 3: 19-cv-01847-AJB-BGS, pending before this Court.

Because the Court need not take judicial notice of filings in its own docket or decisions it has previously issued in order to consider those documents, the Court **DENIES** Bosa's request for judicial notice. *See Tuan Nguyen v. Aurora Loan Servs., LLC*, No. SACV111638AGANX, 2011 WL 13234276, at *2 (C.D. Cal. Dec. 5, 2011).

**C. Discussion**

Liberty first filed its initial complaint on April 3, 2017, asserting a single cause of action for declaratory relief—in particular, a declaration from this Court that multiple occurrences arose from the underlying Legend Action. (Doc. No. 1.) Liberty's single cause of action did not mention a prayer of relief for monetary damages. (*Id.*) On September 29, 2017, Liberty paid its full $4,000,000 aggregate limits to settle the underlying Legend Action. (Doc. No. 166-1 at 3.) Then, over two years later, on September 24, 2019, Liberty filed this motion for leave to amend to add causes of action for monetary relief. (Doc. No. 166.) Liberty's primary position is that monetary relief is inherent in its original complaint for declaratory relief even if not expressly stated. However, Liberty explains it is moving for leave to amend "out of an abundance of caution" to avoid claims of lack of notice that Liberty would seek reimbursement for any amount it overpaid, and any statute of limitation issues. (Doc. No. 166-1 at 2.)

The Declaratory Judgment Act permits "declaratory judgment [to] be used as a predicate to further relief." 28 U.S.C. § 2202. After a declaratory judgment, "[i]f further relief becomes necessary at a later point . . . both the inherent power of the court to give effect to its own judgment, and the Declaratory Judgment Act, 28 U.S.C. § 2202, would empower the district court to grant supplemental relief, including injunctive relief." *Rincon*

*Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (citations omitted).

Liberty asserts that this "further relief" includes the award of damages even if this request was not specifically asserted in a plaintiff's original complaint. (Doc. No. 166-1 at 5.) Liberty seeks to amend its complaint to add two causes of action for monetary relief. Liberty's position is if the Court holds there were multiple occurrences on summary judgment, Bosa clearly failed to pay multiple deductibles and owes Liberty reimbursement. Liberty's alternative position is if the Court holds that there was only a single occurrence on summary judgment, then Liberty overpaid by paying its full $4,000,000 aggregate limits when it should have instead only paid one per-occurrence limit of $2,000,000. (Doc. No. 166-1 at 8.) Thus, Liberty would seek indemnity against ISCOP.

As a preliminary matter, Liberty's motion should be denied because the day after Liberty filed this instant motion, Liberty filed a separate action in this Court, asserting two causes of action that are identical to the two claims sought to be added here against ISCOP and Bosa. *See Liberty Mutual Fire Insurance Company v. Bosa Development California II, Inc., et al.*, Case No. 19-cv-01847-AJB-BGS, (S.D. Cal. Sept. 25, 2019). That case has been designated as related to this instant matter, and there is now a fully briefed motion to dismiss. Thus, Liberty will not suffer any prejudice because any claims of statute of limitation problems is preserved by the filing of the new action pending before this Court. The new action obviates the need for Liberty's motion for leave to amend entirely.

In any event, there are multiple other grounds to deny Liberty's motion for leave to amend. First, the defendants would suffer undue prejudice if Liberty's motion is permitted. Liberty's original complaint was filed approximately three years ago, fact discovery closed on December 3, 2018, expert discovery closed on February 14, 2020, and the parties have already conducted expert depositions. (Doc. No. 87.) Indeed, permitting an amendment at this point of the litigation, after motions for summary judgment have been fully briefed, would indeed prejudice Bosa and ISCOP because discovery would have to be re-opened for the two new claims. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Putting the defendants through the time and expense of continued litigation on a

new theory, with the possibility of additional discovery, would be manifestly unjust and unduly prejudicial.").

Second, Liberty should not be granted leave to amend because its request is unreasonably delayed. Specifically, ISCOP informed Liberty by February 2019, that Liberty had not asserted a position against ISCOP for reimbursement. And yet, Liberty waited seven months to request to amend its complaint. Thus, Liberty was well aware of its potential claim for reimbursement and sat on its hands. (Doc. No. 166-1 at 5); *see AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (finding eight month delay between time of obtaining relevant fact and seeking leave to amend to be unreasonable).

Accordingly, for the reasons stated above, granting Liberty leave to amend at this stage of the litigation would be inappropriate.

## II. CONCLUSION

In light of the foregoing, Liberty has met its burden of proving multiple occurrences under the Liberty Policy. As such, the Court **DENIES** Bosa's motion for partial summary judgment, **GRANTS** Liberty's motion for summary judgment, and **DENIES** Liberty's motion for leave to file a First Amended Complaint. The Clerk of Court is **DIRECTED** to enter judgment for the Plaintiff and against Defendant consistent with this order and **CLOSE** the case.

**IT IS SO ORDERED.**

Dated: April 9, 2020

Hon. Anthony J. Battaglia
United States District Judge