1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT

9
SOUTHERN DISTRICT OF CALIFORNIA

10

11
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

12
Plaintiff,

13
v.

14
BOSA DEVELOPMENT CALIFORNIA

15
II, INC.; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

16
Defendants.

17

18

19

20

21

22

Lead Case No.: 3:17-cv-0666-AJB-BGS; 3:17-cv-00945-AJB-BGS

**ORDER:**

**(1) GRANTING LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION TO STAY, (Doc. No. 213);**

**(2) STAYING CASE NOS. 17-cv-666 AND CASE NO. 17-cv-945; AND**

**(2) DENYING WITHOUT PREJUDICE LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR FURTHER RELIEF, (Doc. No. 210)**

23      Currently pending before the Court are: (1) Liberty Mutual Fire Insurance

24  Company's ("Liberty") motion for further relief, (Doc. No. 210) and (2) Liberty's motion

25  to stay Case No. 17-cv-0945, (Doc. No. 213.) Bosa Development California II, Inc.

26  ("Bosa") opposes the motion for further relief. (Doc. No. 218.) Bosa does not oppose

27  Liberty's motion to stay Case No. 17-cv-945, but instead argues the Court should stay all

28  three Bosa/Liberty related matters pending before this Court. (*Id.* at 25–26.) On July 23,

1

1   2020, the Court held a hearing on the motion to stay, and motion for further relief. (Doc.

2   No. 226.) For the reasons set forth below, the Court **GRANTS** Liberty's motion to stay

3   Case No. 17-cv-0945, **DENIES WITHOUT PREJUDICE** Liberty's motion for further

4   relief, and **STAYS** this instant matter, Case No. 17-cv-666, pending resolution of Bosa's

5   appeal to the Ninth Circuit.

6   **I.      BACKGROUND**

7           This case arises out of several defects found in a condominium construction project.

8   Bosa was the developer of this Legend condominium project ("the Legend Project"). (Doc.

9   No. 156-1 at 9.) Before Bosa began construction on the Legend Project, Bosa purchased a

10  "wrap-up" insurance policy issued by Liberty for all contractors and subcontractors

11  involved in the project ("the Liberty Policy"). (*Id.* at 10.)

12          The Liberty Policy provides that the amount Liberty will pay for "bodily injury" and

13  "property damage" is limited to $2,000,000 for each "occurrence," subject to a total

14  aggregate limit for all damages within the "products/completed operations hazard" of

15  $4,000,000. (Complaint "Compl." ¶ 24.) The Liberty Policy also required Bosa to pay a

16  deductible up to $500,000 for each "occurrence." (*Id.*) The Liberty Policy defines an

17  "occurrence" as "an accident, including continuous repeated exposure to substantially the

18  same general harmful conditions." (*Id.* ¶ 25.)

19          Bosa, as the developer of the project, hired several subcontractors to perform work

20  on the Legend Project. (*Id.* at 13.) In its agreement with the subcontractors, Bosa

21  disclaimed responsibility for supervising the subcontractor's work, and required each

22  subcontractor to enroll in the Liberty Policy. (*Id.*)

23          On February 12, 2012, the homeowners of the Legend condominium building, "The

24  Legend Condominium Association" ("the Association"), provided notice to Bosa of

25  several construction and engineering defects. (Compl. ¶ 29.) The defects included: (1)

26  defective installation of exterior concrete flatwork, planters, canopies, balconies, and

27  waterproofing, resulting in water damage; (2) defective installation of plumbing and

28  HVAC; and (3) improper selection of materials such as cast iron piping and an Eccoduct

1    In-Slab Duct Ventilation System. (Doc. No. 156-1 at 29.)

2         On March 16, 2015, the Association filed suit against Bosa ("the Underlying Legend

3    Action") seeking damages for these defects in San Diego Superior Court. (Compl. ¶ 30;

4    Doc. No. 157-1 at 21.) On September 10, 2015, Bosa filed a cross-complaint against

5    various subcontractors, arguing the subcontractors caused the harm alleged against Bosa.

6    (Compl. ¶ 31.) Then on December 2, 2015, after the filing of the complaint, the Association

7    provided additional notices to Bosa regarding newly-discovered deficiencies at the Legend

8    Project. (*Id.* ¶ 32.) In May 2016, the Association sent an additional notice of defects to

9    Bosa. (Doc. No. 156-1 at 17.)

10        In response to Bosa's and the subcontractors' tenders, Liberty agreed to defend Bosa

11   and the subcontractors in the Underlying Legend Action pursuant to the terms and

12   conditions of the Liberty Policy, subject to a reservation of rights. (Compl. ¶ 33.) The

13   Association eventually settled their claims against Bosa and the subcontractors in the

14   Underlying Legend Action. (Doc. No. 156-1 at 17.) In the settlement, Liberty paid the full

15   $4,000,000 aggregate limit. (*Id.*)

16   **II.    PROCEDURAL HISTORY**

17        On April 3, 2017, Liberty filed a complaint for declaratory relief in this Court against

18   Bosa, ISCOP, and various other defendants ("Liberty's Action"). (Doc. No. 1.) Liberty's

19   complaint sought a judicial declaration that there were multiple occurrences for which Bosa

20   is liable for in the underlying Legend Action in San Diego Superior Court. (*Id.*) On the

21   same day, Bosa filed a complaint against Liberty in San Diego Superior Court ("Bosa's

22   Action"). Bosa's complaint includes, among other things, a claim for declaratory relief.

23   Bosa's Action was then removed to this Court on May 8, 2017. (*See Bosa Development*

24   *California, Inc. et al. v. Liberty Mutual Fire Insurance Company et al.*, Case No. 17-cv-

25   00945-AJB-BGS, Doc. No. 1.) Bosa's Action and Liberty's Action were consolidated in

26   this Court, and Liberty's Action was designated as the lead case. (Doc. No. 48.)

27        On September 25, 2019, a third related case between the parties was filed in this

28   Court ("Third Related Action"). (*See Liberty Mutual Fire Insurance Company v. Bosa*

*Development California II, Inc. et al.*, 19-cv-01847-AJB-BGS.) In that case, Liberty seeks monetary relief from both Bosa, and the excess insurer, ISCOP if it is determined that there was only one occurrence under the Liberty Policy.

On August 16, 2019, Liberty filed a motion for summary judgment, (Doc. No. 156), and Bosa filed a motion for partial summary judgment, (Doc. No. 157.) The central issue for determination by the Court was how many "occurrences" arose under an applicable insurance policy, and accordingly, how many "deductibles" the insured, Bosa is liable for. The Court granted Liberty's motion for summary judgment on April 13, 2020, concluding that Liberty "has satisfied its burden of proving that there were three occurrences" under the Liberty Policy. (Doc. No. 199.) On May 12, 2020, Bosa appealed the decision to the Ninth Circuit, and the appeal is currently pending. (Doc. No. 204.)

Then, on May 21, 2020, Liberty filed a motion for further relief, (Doc. No. 210), and a motion to stay Bosa's Action on June 3, 2020, (Doc. No. 213). Bosa filed a combined opposition to both of Liberty's motions on June 18, 2020. (Doc. No. 218.) This order follows.

## III.    DISCUSSION

### A.    Liberty's Motion for Further Relief

The Court will first consider Liberty's motion for further relief pursuant to 28 U.S.C. § 2202. (Doc. No. 210.) 28 U.S.C. § 2202 provides that "further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Section 2202 is part of the Declaratory Judgment Act, which "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *See Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). "This provision has been interpreted as providing for 'supplemental' relief which may be granted in a proceeding subsequent to the original." (*Id.*) Although an appeal typically divests the district court of jurisdiction over a matter, a motion for further relief under 28 U.S.C. § 2202 is an exception to this

4

1  rule. *See Horn & Hadart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir.

2  1988) ("When a party files a notice of appeal the district court only surrenders 'its control

3  over those aspects of the case involved in the appeal.'" (emphasis added)).

4        Here, Liberty argues that since the Court has made a declaratory ruling in its favor,

5  Liberty is now entitled to $957,358.51,[1] the remaining deductible amount that Bosa owes

6  under the Liberty Policy, in addition to pre-judgment and post-judgment interest. (Doc. No.

7  210-1 at 5.) In opposition, Bosa argues Liberty's motion for further relief should be denied

8  or stayed because there are genuine issues of disputed fact requiring a jury trial. (Doc. No.

9  218 at 15.) Bosa relies on the parties' "Rating Option Endorsement," "Deductible

10  Endorsement," and the "Pledge and Security Agreement," which require that Liberty prove

11  Bosa's responsibility "*up to* [$500,000]." (Doc. No. 218 at 17 (emphasis added).) It is

12  Bosa's position that there is a factual disagreement concerning the amounts expended by

13  Liberty that can be allocated on a per-occurrence basis, and Bosa's deductible liability may

14  be less than $500,000 per-occurrence. (*Id.* at 19.) The Court finds Bosa's argument

15  compelling and persuasive.

16        Simply put, the Court cannot determine the issue of monetary relief without further

17  proceedings. Liberty argues it is entitled to a clear-cut $500,000 per occurrence. (Doc. No.

18  210-1 at 11.) Thus, Liberty concludes it is entitled to 1.5 million dollars for the three

19

20

21  [1] As further relevant background, in its verified complaint against Liberty, Bosa states that, "in conjunction

with the issuance of the Liberty Policies," including the Liberty Policy, Bosa was required to "deposit and

22  maintain monetary collateral to be held in trust . . . in the form of cash, letters of credit, and/or other

collateral that could be liquidated that [Liberty] could use to fund deductible obligations of [Bosa] . . . in

23  the event of claims covered under the terms and conditions of the Liberty Policies." (Doc. No. 1-2, Case

No. 17-cv-0945, at ¶ 18.) The cash collateral was originally used as security to secure Bosa's deductible

24  obligations, and Bosa would directly pay Liberty according to monthly "deductible bills" Liberty sent to

Bosa. (*See id.*) Eventually, Bosa did not pay any further deductible bills and, as a result, Liberty began to

25  draw down on the cash collateral to cover Bosa's deductible and claim-handling obligations. (*See, e.g.*,

Doc. No. 1-2, ¶¶ 71, 157–58.) Currently, Liberty is holding a total of $1,397,328.77 in total cash collateral

26  to secure Bosa's obligations under the relevant insurance policies. (*See id.*) This cash collateral held by

Liberty earns purportedly earns interest at an undisclosed rate. (Doc. No. 210-1 at 14.) Now, Liberty seeks

27  a Court order, permitting it to draw down the cash collateral amount to satisfy Bosa's deductible

28  obligations in light of the Court's order granting summary judgment in favor of Liberty.

1  occurrences the Court found under the Liberty Policy. But unfortunately for Liberty, it is

2  not that simple. Indeed, the parties' Deductible Endorsement to the Legend Policy provides

3  that Bosa's may only be responsible "***up to*** the [\$500,000], for the total of . . . . [a]ll

4  damages, including amounts paid in settlement of a claim or 'suit'. . . plus . . . . [a]ll

5  Supplementary Payments because of all . . . 'property damage' . . . that results from any

6  one 'occurrence.'" (Declaration of Robert Allenby, Ex. A, Doc. No. 218-3 at 25 (emphasis

7  added).) Therefore, whether as to costs to defend the Underlying Action or as to indemnity

8  payments to settle the Underlying Action, Liberty must show that particular dollars are

9  allocable to a particular occurrence "up to" \$500,000. Liberty has not done so.[2] Liberty has

10  not provided any evidence for the Court to determine how much of its defense or indemnity

11  costs were allocable to each of the three occurrences. Liberty repeatedly offers the total

12  amount it has expended in defense and indemnity and states it has sent monthly invoices

13  to Bosa. (*See, e.g.*, Doc. No. 157-12 (showing that the supplemental interrogatory

14  responses merely state the total outstanding balance without a specific breakdown).) But

15  nowhere does Liberty point the Court to a calculation of how much of that total can be

16  broken down to each separate occurrence. Without this evidence, the Court cannot proceed

17  to determine an amount for monetary relief as genuine disputes exist as to the allocation to

18  each occurrence. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959); *Cent.*

19  *Freight Lines, Inc. v. Amazon Fulfillment Servs.*, No. C17-0814JLR, 2019 WL 5227400,

20  at \*5 (W.D. Wash. Oct. 16, 2019) (denying motion for further relief without prejudice

21  where triable issues remained).

22  //

23

24

---

25  [2] In its opposition, Bosa also asserts evidentiary objections to the Declaration of Steve Ginsburg. (Doc.
26  No. 218 at 18 n.7) As Bosa persuasively explains, Steve Ginsburg had no personal knowledge regarding
the nature of particular occurrences arising out of the Underlying Action. Instead, he looked to the claims
27  handlers to make those determinations. As such, these objections are sustained. *See Hardy v. 3 Unknown*
*Agents*, 690 F. Supp. 2d 1074, 1086 (C.D. Cal. 2010) (sustaining evidentiary objections to declaration
28  based on lack of personal knowledge).

### 1.    Pre-Judgment Interest

The Court's inability to award monetary relief at this juncture is further confirmed by its inability to award pre-judgment interest. Liberty asserts it is entitled to pre-judgment interest from September 29, 2017 until the date judgment is entered in Liberty's favor. (Doc. No. 210-1 at 11.) This September 29, 2017 date comes from the day "Liberty made its last payment towards the settlement of the underlying Legend HOA Action" and the date "Liberty had paid its full, $4 million aggregate limits under the Liberty OCIP Policy." (Doc. No. 169 at 6.)

Pre-judgment interest is a component of substantive damages and, in a diversity case, is calculated using the rate determined by state law. *See Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154 (9th Cir. 1988). California Civil Code § 3287(a) provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ." An award of prejudgment interest under § 3287(a) is mandatory. *See McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1131 (9th Cir. 2004). "Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Esgro Central, Inc. v. General Ins. Co.*, 20 Cal. App. 3d 1054, 1060, (1971). Thus, section 3287(a) "does not authorize pre-judgment interest, as a matter of law where the amount of damages depends upon a judicial determination based upon conflicting evidence." *Polster, Inc. v. Swing*, 210 Cal. Rptr. 567, 572 (1985). However, "[w]hile a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal dispute will not." *Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 521 (9th Cir. 1995).

Bosa contends—and the Court agrees—Liberty is not entitled to pre-judgment interest because the amount Bosa owes in deductible(s) is "not certain or capable of being

made certain" by calculation. *See* Cal. Civ. Code § 3287(a). As set forth above, it does not follow with certainty that Bosa owes Liberty the entire $500,000 attributable to each occurrence. Giving an example to clarify, Bosa states "if Liberty paid more than $500,000 to defend and settle an occurrence, Bosa's deductible would be $500,000 therefor; if Liberty paid less than $500,000 to defend and settle an occurrence, Bosa's deductible would be less than $500,000 therefor." (Doc. No. 218 at 20.) While Liberty has provided the total amount, it claims Bosa is liable for, Liberty has not demonstrated any workable method for the parties—or the Court—to determine the amount of Liberty's settlement payments that are attributable to the separate three occurrences. *See St. Paul Mercury Ins. Co. v. Mountain W. Farm Bureau Mut. Ins. Co.*, 210 Cal. App. 4th 645, 665 (2012) (denying prejudgment interest because party had no way of knowing what method of allocation was equitable). Thus, until further proceedings can resolve this dispute, a specific award would be improper.

### 2. Post-Judgment Interest

Logically, until a judgment for monetary relief is entered by the Court, post-judgment interest may not be awarded. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . ."). Thus, in light of the foregoing analysis that Liberty has not demonstrated it is entitled to a monetary judgment at this point, an award of post-judgment interest is not appropriate.

### B. Liberty's Motion to Stay

Having determined that monetary relief may not be granted without further proceedings, the Court will turn to Liberty's motion to stay. As a brief summary of the state of the actions, there are a total of three related cases pending in this Court involving Bosa's and Liberty's deductible liability dispute: (1) Liberty's Action (Case. No. 19-cv-666-AJB-BGS), (2) Bosa's Action (Case No. 17-cv-00945-AJB-BGS), and (3) the Third Related Action (19-cv-01847-AJB-BGS). Liberty's Action and Bosa's Action are consolidated.

In Liberty's Action, Liberty brought a complaint for declaratory relief against Bosa, ICOSP (the excess insurer), and Bosa's subcontractors that performed work at the Legend

8

1  Project. (Doc. No. 1.) In Bosa's Action, Bosa brought a complaint against Liberty, seeking

2  damages and declaratory relief for claims arising out of the construction of the Legend

3  Project in addition to three other high-rise residential condominium projects not in dispute

4  in Liberty's Action. (*See* Doc. No. 1-2, Case No. 17-cv-0945 ("Bosa's Verified

5  Complaint")).) In the Third Related Action, Liberty brought a complaint for declaratory

6  relief and damages against Bosa and ICSOP primarily to preserve the ability to obtain

7  reimbursement were this Court to conclude that there was only one "occurrence" that

8  caused the damage arising out of the Legend Project. The dispositive issue in all three cases

9  centers on the interpretation of the relevant insurance policies' definition of "an

10  occurrence," so as to determine the number of "occurrences."

11        The Court's April 13, 2020 Order—which is being appealed by Bosa—granted

12  summary judgment in Liberty's Action on Liberty's single claim for declaratory relief.

13  (Doc. No. 199.) Now, Liberty seeks a stay in Bosa's Action, pending resolution of the

14  appeal. (Doc. No. 213.) Liberty separately filed a motion to stay the Third Related Action

15  in Case No. 19-cv-01847-AJB-BGS. No stay is sought by Liberty in the Liberty Action.

16  While Bosa does not oppose a stay in the Bosa Action and the Third Related Action, Bosa

17  argues in its opposition that Liberty's Action should be stayed as well, including Liberty's

18  motion for further relief. (Doc. No. 218 at 25.)

19        Moving to the relevant law, a stay is "not a matter of right" but "an exercise of

20  judicial discretion and the propriety of its issue is dependent upon the circumstances of the

21  particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and

22  citations omitted). Courts consider the following factors when deciding a motion to stay:

23  "[1] the possible damage which may result from the granting of a stay, [2] the hardship or

24  inequity which a party may suffer in being required to go forward, and [3] the orderly

25  course of justice measured in terms of simplifying or complicating of issues, proof, and

26  questions of law which could be expected to result from a stay." *Lockyear v. Mirant*, 398

27  F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.3d 265, 268 (9th Cir.

28  1962)).

1   Here, both Liberty and Bosa agree—and so does the Court—that a stay should issue
2   in Bosa's Action.[3] First, minimal damage may result from a stay because Bosa alleges no
3   continuing harm. Second, absent a stay, hardship would result because it would be
4   impractical and inefficient to move forward with Bosa's Action in light of Bosa's appeal
5   in Liberty's Action. Specifically, the question of how the Ninth Circuit interprets the
6   number of "occurrences" under the Liberty Policy will also be dispositive for Bosa's
7   Action. Indeed, proceeding with both actions would cause the parties to incur the time,
8   effort, and expense of litigating issues that would be directly affected by Bosa's appeal.
9   Lastly, a stay would promote an orderly course of justice because the resolution of Bosa's
10   appeal will significantly clarify matters in both Bosa's Action and the Third Related
11   Action. In light of the foregoing, and Bosa's non-opposition, the Court **GRANTS** Liberty's
12   motion to stay Bosa's Action.

13   This leaves the Court with the one last issue related to the motion to stay—whether
14   Liberty's Action (Case No. 17-cv-666) should also be stayed. While Liberty did not move
15   to stay its action, Bosa requests the Court for a stay of the action. (Doc. No. 218 at 25.) A
16   district court "has broad discretion to stay proceedings as an incident to its power to control
17   its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am.*
18   *Co.*, 299 U.S. 248, 254 (1936)). Here, there is minimal to no prejudice to Liberty if
19   Liberty's Action is stayed. Indeed, Liberty is in possession of Bosa's cash collateral on
20   which Liberty accrues interest and is able to commingle with assets of its own. (Doc. No.
21   210-1 at 14.) Furthermore, the cash collateral is sufficient to secure Liberty's claims for
22   two additional deductibles, thus significantly lowering the risk of Liberty being unable to
23   obtain monetary relief in the event the Ninth Circuit affirms. Accordingly, there is minimal
24   to no hardship that would result to Liberty from a stay. By contrast, marching forward with
25   the issue of monetary relief without a stay could potentially work great prejudice to the

26
27
28
[3] For the sake of clarity, the Court will separately file an order granting Liberty's motion to stay the Third
Related Action in the docket for Case No. 19-cv-01847-AJB-BGS.

Lead Case No.: 3:'17-cv-0666-AJB-BGS;
3:'17-cv-00945-AJB-BJS

1  parties and to the Court's judicial resources. The parties could be forced to litigate the

2  complex issue of monetary relief with a risk that it will be all for naught. Consequently,

3  the Court **STAYS** Liberty's Action as well.

4  **IV.    CONCLUSION**

5         Based on the foregoing, the Court may not grant the relief Liberty is seeking without

6  further proceedings. Thus, the Court **DENIES WITHOUT PREJUDICE** Liberty's

7  motion for further relief. (Doc. No. 210.) However, the Court also finds that a stay of both

8  Liberty's Action (Case No. 17-cv-666) and Bosa's Action (Case No. 17-cv-00945) is

9  appropriate. The Court will **GRANT** Liberty's motion to stay Case No. 17-cv-945, (Doc.

10  No. 213) and additionally **STAY** Liberty's Action (Case No. 17-cv-666) pending

11  resolution of Bosa's appeal.

12

13         **IT IS SO ORDERED**.

14  Dated:  July 27, 2020

15                                                    Hon. Anthony J. Battaglia

16                                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

11